POMEROY INK COMPANY

*v.*

ELTWOOD POMEROY.

[Decided August 1st, 1910.]

1. The complainant purchased from the receiver of an insolvent corporation its assets, comprising its name and good will as a going concern, including certain secret formulas and formula notes (commonly known as trade secrets), relating to the manufacture or composition of inks, mucilage and sealing wax, discovered by the defendant while an officer and manager of the insolvent company during the time it was in operation, and by him communicated to that company, and who moreover was afterwards employed by the receiver as general manager in continuing its business until a sale could be made as a going concern, and as such manager, and under the receiver's directions, showed the formulas and formula notes to prospective purchasers as assets of the company, and was employed by the complainant after the purchase. Upon a bill to enjoin the proposed sale of such formulas and formula notes by the defendant, who claimed that, as inventor or discoverer, he still had the right to sell them or disclose them to others, and that complainant's rights thereto were not exclusive—*Held*, after examination of the evidence that as between the defendant and the company, which was wound up as an insolvent corporation, it was intended that they should be its exclusive property, and that they passed to the receiver and to the purchaser of the assets from the receiver, as part of the property assets of the insolvent company and that defendant's attempt to deprive the complainant of the substantial benefit of its purchase by said proposed sale by him would be enjoined.

2. The form of the injunction issued in *Morison* v. *Moat* (*Vice-Chancellor Turner, 1851*) *9 Hare 241; affirmed on appeal, Ibid. 267,* approved and followed.

Heard on bill, answer, replication and proofs.

*Mr. Frank Benjamin,* for the complainant.

*Mr. Eltwood Pomeroy, pro se.*

EMERY, V. C.

The Pomeroy Brothers Company was a corporation of this state, engaged in the manufacture and sale of inks, mucilage and sealing wax, and from about 1896 until the company was decreed to be insolvent, in March, 1908, Eltwood Pomeroy was its president and the general manager in charge of its business. As such he supervised and had charge during these years of the experiments for manufacture—the preparation of its formulas for the composition of its products and the custody of its formulas and formula notes. These formulas and notes represented and were the result of continual investigation and experiments, and included the modification of formulas and processes found necessary from time to time to meet business conditions, and they show continual changes and modifications. These formulas and formula notes, with their changes and modifications, containing substantially the information as to the company's process of manufacture, were kept secret. They were largely, if not altogether, the result of Eltwood Pomeroy's experiments and investigations.

Upon the company being declared insolvent, the formulas and formula notes were turned over to the receiver as part of the assets of the company, being valued in the inventory at $2,000. Eltwood Pomeroy was employed by the receiver as general manager in continuing the business until a sale could be made as a going concern, and as such manager, and under directions of the receiver, he showed the formulas and formula notes to Thomas Cooper and David Young, Jr., prospective purchasers, as assets of the company. Cooper believing them to be assets of the company, and a valuable part thereof, as representing the secret processes of the company's manufacture, subsequently purchased the assets of the Pomeroy Brothers Company, including its name and good will from the receiver. After this purchase he conveyed these assets so purchased to the Pomeroy Ink Company, the present complainant, and the formulas and formula notes were delivered as part of the assets. The complainant also, upon its commencing business, employed Eltwood Pomeroy, and he had charge (among other things) of its advertising circulars. In one of these a pamphlet called "Inklings," published in July,

1908, under Eltwood Pomeroy's supervision, occur these statements:

"Recently the Pomeroy Ink Company was incorporated; this month the stock, plant, formulas, good will, patents, trade-mark, business of Pomeroy Brothers Company was purchased by the new company. As far as quality of goods is concerned you will get identically the same from the new as from the old company, except as we may improve them in the future and we expect to never cease improving."

This pamphlet contained also a personal note to stationers, signed by Eltwood Pomeroy, bespeaking for the new company a continuance of the orders previously given to him and the old company, and the pamphlet, after commenting on the increased cost of manufacture, states that "on many articles we have so improved the processes of manufacture that we will give you the benefit of that economy, but advance some, we must."

Eltwood Pomeroy had copies of these formulas and formula notes, and after leaving the employ of the complainant company, offered for sale to dealers complete sets of the formulas, stating in his circulars or letters offering them for sale, that he was the main owner of Pomeroy Brothers Company, and had sole charge of its chemical research, and that under his supervision, its formulas had been completely revised and wonderfully improved. The offer to sell included full directions, exact names of colors and raw materials and where to buy them. He also states that the Pomeroy Brothers Company, being now out of existence, he is not under any obligation as to his knowledge.

The present bill is filed to enjoin such sale, and is based on the claim that the formulas and formula notes are the property, and the exclusive property of the complainant. Defendant's right to sell the formulas is based on the claim that as the inventor or discoverer of the formulas, he still has the right to them, to sell them or disclose their secret to others, and that the complainant's right to the formulas is not exclusive. The argument forcibly presented by the defendant on his own behalf is, that the formulas not being trade secrets confided to him by an employer, his own rights to them as the product of his own industry and ability have not been transferred to the employer by any contract, and therefore still remain in him, subject only

to a right of Pomeroy Brothers Company to also use the formulas as part of its processes of manufacture during its existence, which right, being personal only, ceased on its insolvency and did not pass to the receiver or his grantees.

The nature of the right of an inventor or discoverer to a process of manufacture or a composition of matter which has been invented or discovered, is well settled. Such invention or discovery does not of itself confer upon the discoverer an exclusive property right good against all the world, as does the ownership of tangible chattels, and such exclusive right good against the world can only be acquired under patent or similar laws, which limit the time and prescribe the conditions of acquiring such exclusive right. But even if exclusive property rights to any discovery or invention are not thus secured under patent laws, the discoverer or inventor still has a kind of property right in his invention or discovery, which he may transfer either absolutely or to a limited extent. Such transfer will pass to the vendee the title to the discovery, either absolute or limited, against the discoverer, but as against others than the vendor or transferrer, the title, not being protected by exclusive patent laws, depends upon the right of the inventor or discoverer, or his grantee, to prevent the use of the invention or secret process by the person claiming to use them, and this right of prevention is based on special equities or rights against such person which disentitle him to the use. If knowledge of the process or invention has come to such claimant fairly and honestly and under circumstances which give the inventor no personal claim against him, the use will not be enjoined. In most cases this equity against the use is based on the confidential communication of the invention or process by an employer, being the inventor or owner of the process or invention, to employes, and in this case the employe, or his grantee, will be enjoined from using or communicating the process or invention of his employer. A few leading cases, some in our own courts, suffice to illustrate these well-settled general principles. *Morison* v. *Moat* (*Vice-Chancellor Turner, 1851*), *9 Hare 241; affirmed on appeal, Ibid. 237; Peabody* v. *Norfolk* (*1868*), *98 Mass. 452; Chadwick* v. *Covell* (*1890*), *151 Mass. 190; Stone* v. *Grasselli Chemical Co.* (*Court*

of *Errors and Appeals, 1903*), *65 N. J. Eq. (20 Dick.) 756; Vulcan Detinning Co.* v. *American Can Co. (Court of Errors and Appeals, 1906), 72 N. J. Eq. (2 Buch.) 387.*

The present case is not one where complainant's right to the use of the formulas and formula notes as against the defendant, depends upon the principle of confidential communication, for as to this feature of the case, the defendant, while an officer and manager of the company, was himself the inventor or discoverer of the process and communicated it to the company. But the vital question in the case is whether the defendant, the discoverer or inventor of the processes disclosed by the formulas, transferred to the Pomeroy Brothers Company the exclusive right to the formulas and formula notes, as their property. If so, such transfer is binding on him and passed with the assets of the company to the complainant. No written or express transfer was made or is claimed, but there is no reason why the transfer of such rights may not be based on an implied as well as on an express contract. In *Silver Spring, &c., Co.* v. *Wollworth (Rhode Island, 1890), 19 Atl. Rep. 528,* it was determined that, under all the facts in the case, a contract by the discoverer (an employe) for transfer of the right to the employer was implied, and would be enforced; and in *Baldwin* v. *Von Micheroux (Supreme Court, 1893), 25 N. Y. Supp. 857,* it was also held that, under the facts proved, the employers were the owners of the secret processes for flavoring extracts compounded by the employe, although no express contract was proved, and the employe was enjoined from using them. The evidence of an implied contract giving the employer the exclusive right as against the discoverer should, of course, be clear and satisfactory, as otherwise the inventor would be deprived of a benefit of his discovery, to which he would be reasonably entitled, on leaving the employment, but if the facts of the case lead clearly to the conclusion that from the acts and conduct of both parties it was intended that the process or formulas discovered during the employment should belong to the company alone, the contract should be enforced.

Considering all the proofs relating to the discovery and use of these formulas and formula notes, I reach the conclusion upon

the evidence, that, as between Eltwood Pomeroy and Pomeroy Brothers Company, it was intended that they should be the exclusive property of the company. They were in their nature processes or compositions which could not be protected to any extent by patents, for the combinations patented while suggesting valuable processes might easily be avoided or rendered difficult to enforce by changes in proportions or ingredients, and as appears by the evidence, the formulas from time to time were subject to continual modifications to meet business conditions or for special requirements. The only practical method of securing to the company the benefit of the formulas was by secrecy and the method adopted by the company under Eltwood Pomeroy's management for the protection and use of the formulas clearly shows that this was the basis for building up the business of the company, at whose expense the experiments were made.

Eltwood Pomeroy was (as he says in his circular letter) the main owner of the company, as well as its president and general manager, and this circumstance must also have weight in deciding this issue of an implied contract, that so far as he was concerned, the formulas and notes were assets and the exclusive property of the company. This situation probably explains the absence of a formal express contract, which, in the ordinary course of business, would probably have been made. And his admissions since the failure of the company by the inclusion of the formulas among the assets at a valuation which depended wholly on the exclusive use, by his representations of their value to intending purchasers, and especially his statements to the trade in July, 1908, that the formulas, good will and business of the Pomeroy Brothers Company had been purchased by the complainant, are also facts pointing to the conclusion that from the time of his assuming the management of the original company until he left the service of its successor, he supposed that the formulas belonged to the company as its property and not to himself. His subsequent attempt to deprive the complainant of the substantial benefit of its purchase should not be permitted to succeed. The disclosure of the processes with the directions for their use, proposed by the defendant, would probably result in the destruction or serious impairment of the business which

complainant has purchased, relying on the secrecy of the formulas. If the formulas and notes and the Pomeroy Brothers Company's secret process of manufacture, as shown by these, belonged to this company as their property, they passed to the receiver and to the purchasers of the assets from the receiver, as part of the property assets of the insolvent company.

At the hearing the question was also raised by the defendant as to the form of injunction, in case it should be held that complainant was entitled to an injunction. The preliminary injunction restrained the defendant from selling or disposing of any of the formulas or formula notes sold by the receiver and from revealing the contents of the formulas and formula notes to any other person or corporation, either by disposing of them or in any other manner. It was objected that this was too general and that the injunction should describe or define specially each formula whose sale was enjoined. The general form is, however, the one sanctioned by high authority and was adopted in *Morison* v. *Moat, supra,* the first leading case on this subject, and has been followed in other cases.

To insert the formula in the injunction would destroy its secrecy.

I will advise decree for permanent injunction in the form of preliminary injunction.