## ARNOLD L. SCHAVOIR *vs.* AMERICAN RE-BONDED LEATHER COMPANY.

Third Judicial District, Bridgeport, April Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HAINES and HINMAN, Js.

The possessor of a trade secret has not, strictly speaking, any property rights therein and, if the secret be in its nature unpatentable, he may never acquire any. The so-called "property" which he does secure and which the courts will protect, is the right that one who stands in confidential relations with him and to whom, in the course of such relations, he has disclosed his secret, shall not abuse his trust.

The mere fact that the marketing of a secret process or formula necessarily creates the possibility that the world at large may discover, by chemical analysis or experimentation, its elements or ingredients, will not destroy the pre-existing rights of the originator, provided the method of its production still remains a secret.

In the present case, the plaintiff devised a formula, unknown to others, for producing a cushion fabric, known as channel cloth, to be placed between the metal frame and the glass of automobile windows. The process, which consisted of spreading upon a cloth base a composition of cork, rubber and other ingredients, was, with certain additions, basically a re-apportionment and re-adaptation to the use in question of the elements which were included in the Goodyear patent of 1859 covering the fabrication of artificial leather and similar products. Having no means of producing the cloth upon a commercial scale, the plaintiff engaged the defendant to manufacture it for him upon the latter's promise not to disclose the formula and to use it only as and when authorized by the plaintiff. Thereafter, the defendant proceeded not only to make the cloth for the plaintiff, but also, with slight changes in the composition of the formula, to produce large quantities which it attempted to market among automobile manufacturers in its own behalf. The trial court granted an injunction against the further use by the defendant of the plaintiff's secret. *Held* that the trial court did not err; and that the defendant's misappropriation of the basic idea confidentially disclosed to it by the plaintiff could not be justified on the ground that it had made minor variations in his formula, even though such variations consisted

of the elimination of all elements except those included in the Goodyear process.

Argued April 21st—decided May 29th, 1926.

ACTION for an injunction to restrain the defendant from making use of a trade secret disclosed to it by the plaintiff, brought to the Superior Court in Fairfield County and tried to the court, *Booth, J.;* judgment rendered for the plaintiff, and appeal by the defendant. *No error.*

*Ralph H. Clark,* with whom, on the brief, was *Samuel C. Morehouse,* for the appellant (defendant).

*Raymond E. Hackett,* for the appellee (plaintiff).

MALTBIE, J. The plaintiff brings this action to restrain the defendant from using or disclosing a certain formula and process which he claims to have originated and disclosed to the defendant under its promise to keep it secret and to use it only when authorized by him.

For several years prior to 1923 the plaintiff had been engaged in manufacturing various kinds of rubber goods and specialties. In and prior to that year, he, with his son, had been experimenting in the effort to produce a cushion fabric, known as channel cloth, to be placed between the metal piece which holds the glass in automobile windows and the glass itself. The material then in use for that purpose was composed of a cloth base coated with a mixture of cork, linseed oil and other ingredients, and it was not satisfactory because it was hard and inflexible. The plaintiff was seeking a composition which, when placed upon a cloth base, would be soft and pliable and flow to the contour of the glass. He finally discovered a formula, the basic feature of which was a mixture of cork and rubber, to which were added other ingredients such as shellac and

rubber substitutes. This formula was adapted to experimental work, but would require modification before it could be used for quantity production. Not being equipped to manufacture the product, the plaintiff approached the defendant with a view to making with it an arrangement to produce the cloth in quantity for him, stating that he would only disclose his formula upon the defendant's promise to keep it secret and to use it only when authorized by him. An arrangement was finally made in which the defendant undertook to try to produce an article similar to the sample submitted to it by the plaintiff, and if successful, to manufacture the cloth for him, promising to keep the formula secret and only to use it as authorized by him.

The plaintiff thereupon disclosed his formula, and the defendant experimented with it further, and finally succeeded, by making some changes, in producing a composition suitable for quantity production; and for these experiments the plaintiff paid the defendant. The formula so reached consisted of cork, rubber in different forms, rubber substitute and micronex, with a considerable quantity of litharge, to act as an accelerator, and small quantities of two or three other materials. Thereafter the defendant proceeded to manufacture large quantities of the cloth for the plaintiff, and continued to do so until the plaintiff discovered that the defendant was circulating samples of the cloth among automobile manufacturers with a view to establishing a market of its own for its manufacture and sale. The agreement between the parties was thereupon abrogated and the plaintiff withdrew from the defendant the authority he had given to it to use the formula. Thereafter the defendant proceeded to manufacture channel cloth, using a formula consisting of cork, rubber, rubber substitute, carbon black or micronex, with litharge added, in much the same pro-

portions as it had used these materials before. After the action was brought, the defendant further simplified its formula by leaving out the litharge and rubber substitute, slightly varying the proportions of the materials remaining. The channel cloth produced by this formula was similar in appearance to, and had the same characteristics as, that which the defendant had been manufacturing for the plaintiff.

The trial court has further found that in 1859 there was issued by the United States Patent Office the so-called Goodyear patent, which covered the process of combining cork and rubber and allied gums and spreading them upon cloth; that this process had been known and used ever since to produce artificial leather and the like; but that the use of a composition of rubber and cork, or of that with other ingredients, to produce a cushion fabric or channel cloth, originated with the plaintiff, and had never been used for that purpose until the plaintiff disclosed his formula to the defendant; nor had the defendant ever used the Goodyear process for any purpose or produced material similar to that which it manufactured for the plaintiff.

The defendant's main contention, in brief, is that the plaintiff is entitled to relief only as he can show that he had a property right of some nature entitled to protection in equity, and that by reason of the long-time knowledge and use of the process covered by the Goodyear patent, which included the basic feature of the plaintiff's formula, he could have no property right in that formula. The principle upon which courts proceed in the protection of trade secrets is stated in *Du Pont De Nemours Powder Co.* v. *Masland,* 244 U. S. 100, 102, 37 Sup.Ct. 575, where the court, by Justice Holmes, said: "The word property as applied to trademarks and trade secrets is an unanalyzed expression of certain secondary consequences of the primary fact

that the law makes some rudimentary requirements of good faith. Whether the plaintiffs have any valuable secret or not the defendant knows the facts, whatever they are, through a special confidence that he accepted. The property may be denied but the confidence cannot be. Therefore the starting point for the present matter is not property or due process of law, but that the defendant stood in confidential relations with the plaintiffs, or one of them. These have given place to hostility, and the first thing to be made sure of is that the defendant shall not fraudulently abuse the trust reposed in him. It is the usual incident of confidential relations."

Indeed, the fact that the discoverer of a process or formula may not be able to secure property rights in it by means of the patent law, may be the very reason why he seeks the protection of secrecy. He must have a secret, that is, something not known to the public or in his trade; and the character of the article produced might make so obvious the process or formula by which it is made that the very putting of it upon the market destroys the secret of its production. But this does not mean that the possibility of its discovery, by chemical analysis or experimentation, will itself put an end to the rights of the originator, and so long as the method of its production remains a secret, the law is not much concerned with its nature or the elements which go to make up the composition. Here the plaintiff, consciously or unconsciously, did make use of elements which, in a certain combination, were covered by the old Goodyear patent, and the use of which, in that combination, had become well known for certain purposes. But the proportions of those elements going to make up the composition which the plaintiff originated, and that which, while acting for him, the defendant finally adapted to commercial use, the ad-

ditional elements deemed necessary to produce an article of commercial value, and the adaptation of the combination to the manufacture of channel cloth, were matters not known to others, and were his distinctive contribution to commercial progress. Speaking of the patentability of an invention, the United States Supreme Court has said: "It is often difficult to determine whether a given improvement is a mere mechanical advance, or the result of the exercise of the creative faculty amounting to a meritorious invention. The fact that the invention seems simple after it is made does not determine the question; if this were the rule many of the most beneficial patents would be stricken down. It may be safely said that if those skilled in the mechanical arts are working in a given field and have failed after repeated efforts to discover a certain new and useful improvement, that he who first makes the discovery has done more than make the obvious improvement which would suggest itself to a mechanic skilled in the art, and is entitled to protection as an inventor." *Expanded Metal Co.* v. *Bradford*, 214 U.S. 366, 381, 29 Sup.Ct. 625.

It was open to anyone to use the same process, provided they came by the necessary knowledge fairly. But the trial court finds that the method developed by the plaintiff continued to be his secret after the placing of the channel cloth upon the market. The knowledge of the process which the defendant had was obtained by reason of the confidence reposed in it by the plaintiff, and upon its express promise not to divulge the information so secured, and to use the formula only as authorized by the plaintiff. Cork, rubber, and micronex, the basic features of the formula used by the defendant after the contract was abrogated, were those disclosed to it by the plaintiff, and, with a minor variation, the defendant used them to produce

an article virtually the same as that which it had manufactured for the plaintiff, and so to compete with him in the very field wherein it had contracted to serve him.    In such a situation, the right of the plaintiff to protection in equity is amply established.  *Peabody* v. *Norfolk,* 98 Mass. 452; *American Stay Co.* v. *Delaney,* 211 Mass. 229, 98 N.E. 1070; *Tabor* v. *Hoffman,* 118 N.Y. 30, 23 N.E. 12; *Pomeroy Ink Co.* v. *Pomeroy,* 77 N.J. Eq. 293, 78 Atl. 698; *Macbeth-Evans Glass Co.* v. *Schnelbach,* 239 Pa. St. 76, 96 Atl. 688; *Westervelt* v. *National Paper & Supply Co.,* 154 Ind. 673, 55 N.E. 552; *Victor Chemical Works* v. *Iliff,* 299 Ill. 532, 132 N.E. 806; *Kaumagraph Co.* v. *Stampagraph Co.,* 235 N.Y. 1, 138 N.E. 485; *O. & W. Thum Co.* v. *Tloczynski,* 114 Mich. 149, 72 N.W. 140; *Benton* v. *Ward,* 59 Fed. 411; *Morison* v. *Moat,* 20 L.J. (N.S.) Ch. 513, 522, 21 L.J. (N.S.) Ch. 248; *Tuck & Sons* v. *Priester,* L.R. 19 Q.B.Div. 629; Hopkins on Trademarks, etc. (4th Ed.) § 109.

The defendant also assigns as error the overruling of its claim on the trial, that the plaintiff was entitled to no greater relief than that warranted by the allegations of his complaint.  Such an assignment is too general to comply with our rules.  *Janulewycz* v. *Quagliano,* 88 Conn. 60, 64, 89 Atl. 897; *Hine* v. *McNerney,* 97 Conn. 308, 309, 116 Atl. 610.  A perusal of defendant's brief indicates its real claims under this assignment to be, first, that the formula it finally developed was its own discovery, which it had a right to use, and second, that it could not in any event be enjoined from using the old Goodyear process to produce the channel cloth.  But the idea which it acquired from the plaintiff was to produce channel cloth by the use of a composition, the basic features of which were much the same as those used in the Goodyear process.  So long as it is using that idea to compete

with the plaintiff, in breach of the confidence he reposed in it, and of its promise to him, it cannot purge itself by making minor variations in the method or formula it uses; *Germo Mfg. Co.* v. *Combs,* 209 Mo. App. 651, 671, 240 S.W. 872; and that is so, though such variations consist in the elimination of all elements except those included in the Goodyear process.

There is no error.

In this opinion the other judges concurred.