## BERRY v. GLIDDEN CO.

United States District Court
S. D. New York.
July 21, 1950.

910

Stone & Perlman, New York City, Louis Stone, New York City, for plaintiff.

Strange, Myers, Hinds & Wight, New York City, Roger Hinds, New York City, for defendant.

BONDY, District Judge.

This is an action permanently to enjoin defendant from using or disclosing a secret formula which plaintiff alleges he originated and revealed to defendant in confidence. Plaintiff also seeks an accounting for any profits made by defendant as a result of its commercial exploitation of said formula. The action was removed to this court from the State court by reason of the diversity of citizenship of the parties.

Plaintiff, a woodfinisher for forty years, began to experiment in 1937 in search of a practicable composition that would stain and fill wood in one operation and thereby substantially expedite the conventional woodfinishing process. More specifically, he was seeking a combination stain and filler which would possess the non-fading qualities of a water stain and at the same time avoid its grain-raising effect and improve its penetration. After experimenting for six years plaintiff in 1943 filed patent application No. 477,877, covering his formula for such a combination stain and filler. Not satisfied with the product, plaintiff continued his experiments and on September 20, 1945 filed patent application No. 617,671, which set forth an improved formula and constituted an abandonment of his earlier application. This second application is still pending in the Patent Office.

On or about September 26, 1945, following certain preliminary correspondence, plaintiff visited defendant's plant in Cleveland, Ohio, for the purpose of interesting defendant in the commercial exploitation of his product. Upon his arrival he informed Mr. Shurtleff, defendant's manager of Industrial Sales, that he had discovered a lacquer type combination stain and filler which in one operation would stain and fill wood, eliminate the use of a wash coat and, if the wood were well sandpapered, obviate the necessity of sealing. Mr. Shurtleff then offered plaintiff an opportunity to disclose and demonstrate his formula. Thereupon plaintiff proceeded to disclose to Mr. Butler, the head of defendant's wood stain and filler department, and two other employees of defendant, what is conceded to be substantially the formula set forth in plaintiff's second patent application (although he did not have a copy of that application with him at the time). Using defendant's laboratory facilities and materials, and with the assistance and approval of plaintiff, defendant's employees prepared samples of a composition which, with minor additions and variations, was made according to plaintiff's formula for a lacquer-type combination stain and filler. Some preliminary tests were made with

these samples and before plaintiff left Cleveland Mr. Shurtleff told him that a proposed license agreement would be forwarded to him.

Thereafter, plaintiff received an unsigned agreement from defendant dated November 1, 1945 which proposed that plaintiff, as sole owner of "an invention relative to a Lacquer Type Combination Stain Filler and Wash Coat covered by United States patent application No. 477,877", grant defendant, among other things, an exclusive license to make, use and sell the process and products covered by that application, in return for the payment of royalties by defendant. After changing the patent application number to 617,677, his second patent application, plaintiff executed the agreement and returned it to defendant. By letter dated December 5, 1945 defendant informed plaintiff that it would be necessary to draft a new contract by reason of the change in patent application numbers, and requested a copy of application No. 617,671. Plaintiff complied with this request on December 18, 1945, but did not hear anything further from defendant until he received a letter dated February 26, 1946, and with it the proposed license agreement unsigned by defendant. The letter stated that defendant did not at that time wish to engage in the manufacture of plaintiff's product. Prior thereto, defendant had distributed free samples of plaintiff's lacquer type combination stain and filler to some of its customers, but aside from an order for 114 gallons obtained by plaintiff from a Florida furniture company, on which plaintiff was paid a commission, defendant did not receive any orders for the product.

Shortly after informing plaintiff that it did not intend to use his product, defendant began to manufacture and sell a combination stain and filler under the registered trade-mark "Filcotone". It is this product that plaintiff claims is made according to the formula disclosed by him to defendant in confidence.

Defendant concedes that a confidential relationship existed between the parties at the time of plaintiff's disclosure and that by reason thereof it impliedly promised that it would not use plaintiff's formula, except upon terms agreed to by plaintiff, if, and to the extent that, such formula was novel or involved any novel feature not already known to defendant. However, defendant denies that "Filcotone" is the same, or substantially the same, product as was disclosed by plaintiff's formula. Furthermore, it contends that plaintiff did not disclose anything novel or not already known to defendant and hence there was no breach of its implied promise even if defendant did use plaintiff's formula.

With respect to the issue of identity, it is conceded by defendant that any differences in the proportions of the ingredients contained in "Filcotone" and plaintiff's formula are not material. The primary distinction urged by defendant is that plaintiff's formula is for a combination stain and filler of the lacquer type, that is, contains nitrocellulose, lacquer thinner and compatible resins, whereas "Filcotone" is of the varnish type and as such does not contain any of those ingredients.

It is true that plaintiff described his composition to Mr. Shurtleff as a "lacquer type" combination stain and filler and that the samples prepared at the Cleveland plant in plaintiff's presence were of that type. Likewise, the proposed license agreement clearly indicates that defendant regarded plaintiff's product as "an invention relative to a Lacquer Type Combination Stain Filler and Wash Coat." Although plaintiff made some effort at the trial to prove that "Filcotone" contains nitrocellulose, the court is convinced that defendant's product is of the varnish, not lacquer, type. However, it is not necessary to determine whether this difference is material, since it is undisputed that plaintiff also informed defendant's employees in confidence that a varnish base could be used as an alternative to a nitrocellulose base in his formula. Not only is there the testimony of Mr. Butler corroborating plaintiff's testimony to that effect, but the same information is contained in plaintiff's patent application No. 617,677, which was forwarded to defendant at its request and retained by it for approximately two months. It follows that defendant's use of a varnish, instead

of a nitrocellulose, base in "Filcotone" does not serve to differentiate its product from what was disclosed to it by plaintiff.

As for the other components of the two products, each ingredient of plaintiff's formula has either its precise counterpart or substantial equivalent in "Filcotone". Nor is the court aware of any element in "Filcotone" that distinguishes it significantly from plaintiff's formula. Even if defendant modified or improved upon the details of plaintiff's formula, it can not escape liability if it adopted the salient features of that formula, see Booth v. Stutz Motor Car Co. of America, 7 Cir., 56 F.2d 962, 968; Allen-Qualley Co. v. Shellmar Products Co., D.C., 31 F.2d 293, 296, affirmed, 7 Cir., 36 F.2d 623; Mycalex Corp. v. Pemco Corp., D.C., 64 F.Supp. 420, 425, affirmed, 4 Cir., 159 F.2d 907, provided that such features were novel. Flanigan v. Ditto, Inc., 7 Cir., 84 F.2d 490, 495; Smoley v. New Jersey Zinc Co., 3 Cir., 106 F.2d 314, 315, affirming, D.C., 24 F.Supp. 294.

It is true that plaintiff claimed that his product would avoid the necessity of a sealing coat if the wood were well sandpapered, whereas defendant makes no such claim for "Filcotone". The issue, however, is whether the two products are substantially alike, not whether plaintiff may have been extravagant in describing the merits of his; and that issue, as already has been indicated, must be resolved in favor of plaintiff.

█ It is not enough, however, that defendant used what plaintiff imparted to it in confidence. Before defendant can be restrained from, or held to account for, such use plaintiff must further establish that he disclosed something novel to defendant. Flanigan v. Ditto, Inc., supra; Smoley v. New Jersey Zinc Co., supra; see A. O. Smith Corporation v. Petroleum Iron Works Co., 6 Cir., 73 F.2d 531, 538, modified on another ground, 6 Cir., 74 F.2d 934; De Fillippis v. Chrysler Corporation, D.C., 53 F.Supp. 977, 980, affirmed, 2 Cir., 159 F.2d 478. "If the rule were not so restricted it is obvious that by disclosing an idea under delusions of confidence, the person making the disclosure could there-after prevent the confidante (sic) from subsequently making use of it, even though the idea was well-known prior to the date of the disclosure and open to the use of all others in the world." Smoley v. New Jersey Zinc Co., D.C., 24 F.Supp. 294, 300, affirmed, 3 Cir., 106 F.2d 314.

Plaintiff does not claim that he originated the idea of a combination stain and filler. Nor does he contend that he originated the idea of a combination stain and filler of the water-soluble dye type. His claim is that he discovered the specific formula which he disclosed to defendant.

Dr. Mantell, a consulting chemical engineer and an expert in the field of paint and varnish technology, testified that there are certain fundamental characteristics necessarily common to all combination stain and fillers. According to his uncontradicted testimony, every stain and filler must contain coloring matter (typically oil-or water-soluble dyes), a filling material (such as silica or abestine), and a binder (such as nitrocellulose or varnish), all of which was common knowledge in the wood-finishing trade before 1945. To the extent that plaintiff's formula consisted of such ingredients as water colors, silica, corn starch, nitrocellulose (or, alternatively, varnish) and lacquer thinner, there can be little question that it was well known to the trade, including defendant, at the time of its disclosure. The necessity of including these, or substantially equivalent, materials in any combination stain and filler of the water-soluble dye type made it inevitable that there be a basic similiarity between plaintiff's formula and "Filcotone". Since plaintiff does not claim, and certainly did not prove, that he originated and imparted to defendant the idea of producing a combination stain and filler of the water-soluble dye type, it follows that defendant was free to manufacture such a composition without obligation to plaintiff unless in so doing it used a novel feature of plaintiff's specific formula.

The only possible improvement over other combination stain and fillers found in plaintiff's product is that it possesses the advantages accruing from the use of a

water stain and at the same time obviates its chief disadvantage—grain-raising and the consequent necessity of a wash coat and an additional sandpapering process. This is accomplished by carrying the water-soluble colors in a volatile solvent (butyl carbitol) instead of water. However, it is precisely this aspect of plaintiff's formula that was anticipated by the so-called "Chadeloid patents", under which defendant has been a licensee since 1935 and certain of which were originally owned by defendant before it assigned them to the Chadeloid Corporation.

■ It is well settled that a secret process need not be patentable in order to be protected from use or disclosure by one to whom it has been revealed in confidence. See Sandlin v. Johnson, 8 Cir., 141 F.2d 660, 661; A. O. Smith Corporation v. Petroleum Iron Works Co., 6 Cir., 73 F.2d 531, 538, modified on another ground, 6 Cir., 74 F.2d 934; Allen-Qualley Co. v. Shellmar Products Co., D.C., 31 F.2d 293, 296–297, affirmed, 7 Cir., 36 F.2d 623. Nevertheless, the fact that the only distinctive feature of plaintiff's formula is covered by a group of antecedent patents under which defendant is a licensee has an important bearing on the question whether that feature was novel at the time it was disclosed to defendant. It has been held that the confidential discloser of a secret process, who subsequently obtains a patent covering that process, may not recover for a breach of confidence occurring after the issuance of the patent, since the patent constitutes a disclosure to the world of whatever novelty the process previously may have enjoyed. Flanigan v. Ditto, Inc., 7 Cir., 84 F.2d 490, certiorari denied 299 U.S. 598, 57 S.Ct. 190, 81 L.Ed. 440. And see Sandlin v. Johnson, 8 Cir., 141 F.2d 660, 661. But cf. A. O. Smith Corporation v. Petroleum Iron Works Co., 6 Cir., 74 F.2d 934, modifying 6 Cir., 73 F.2d 531. Similarly it may be argued that the issuance of the Chadeloid patents disclosed their contents to the world, so that there was nothing novel about the non-grain-raising feature of plaintiff's formula when it was revealed to defendant. However, in at least two cases the discloser of a secret process obtained relief against a confidential disclosee despite the fact that his discovery had been anticipated by a patent issued to a third person. Allen-Qualley Co. v. Shellmar Products Co., 7 Cir., 36 F.2d 623, affirming, D.C., 31 F.2d 293; Schavoir v. American Re-Bonded Leather Co., 104 Conn. 472, 133 A. 582. In each of these cases it appears that the secret process, although anticipated by a patent, was nevertheless not actually known to the disclosee before the disclosure. In other words, insofar as he was concerned the disclosure was novel and therefore there was some consideration for implying a promise on his part not to make use of it without proper authorization. Even under this test, however, which is obviously more favorable to a confidential discloser than the implications of Flanigan v. Ditto, Inc., supra, plaintiff is not entitled to prevail.

■ Admittedly, when plaintiff disclosed his formula to defendant the latter was not producing a combination stain and filler. It had manufactured one of the oil-soluble dye type in 1937, but had discontinued its manufacture after a short time because of its failure to produce a clear finish. A few months after plaintiff's disclosure defendant commenced the production of "Filcotone", a combination stain and filler of the water-soluble dye type, and proceeded to advertise it to the wood finishing trade as an "amazing", "new" and "revolutionary" product. It is largely on the basis of these facts, and the fact that defendant displayed sufficient interest in plaintiff's formula to suggest a licensing arrangement, that plaintiff would have the court infer that his formula disclosed something novel to defendant. However, there was uncontradicted testimony that defendant as a licensee under the Chadeloid patents had used water colors in its stains and fillers without grain-raising effects at least as early as 1937. Moreover, defendant has paid royalties on "Filcotone" to the Chadeloid Corporation measured by the amount of the non-grain-raising stain component used in the product. Since the only distinctive aspect of plaintiff's formula was this non-grain-raising feature, it is difficult to understand what plaintiff disclosed to defendant that it did not already know. In-

deed, when plaintiff first revealed his formula to defendant's employees at the Cleveland plant Mr. Butler expressed his belief to plaintiff that his product was covered by the Chadeloid patents. It is unimportant that defendant did not advance this reason to plaintiff for refusing to enter into the contemplated license agreement. It is possible, though it was not an issue in the case and not proved, that defendant did find upon further investigation of plaintiff's lacquer type combination stain and filler that it "was subject to shrinkage and lacked adhesion." If so, that in itself would have been ample reason for not desiring a license from plaintiff. However that may be, merely because defendant at one time appeared willing to compensate plaintiff for his formula can not operate to impose an implied contractual duty upon it not to use that formula irrespective of its novelty. Since most of the ingredients of plaintiff's formula were common knowledge in the woodfinishing trade and since its only distinctive feature was well known to defendant prior to its disclosure, the latter can not be restrained from using that formula or compelled to account to plaintiff for any past use.

Defendant accordingly is entitled to judgment dismissing the complaint.