## JOHN W. EVANS ET AL. *v.* GENERAL MOTORS CORPORATION

Superior Court, Complex Litigation Docket, Judicial District of Waterbury
File No. X06-CV-94-0156090-S

Memorandum filed September 13, 2007

*Robert J. Silverman,* pro hac vice, for the plaintiffs.

*Jonathan F. Putnam,* pro hac vice, for the defendant.

STEVENS, J.

## STATEMENT OF THE CASE

This action commenced in January, 1994. The plaintiffs are John W. Evans and Evans Cooling Systems, Inc., and the defendant is General Motors Corporation (General Motors). The operative complaint is the amended complaint filed in April, 2001. This complaint alleges that Evans is an inventor of automotive cooling system techniques and improvements, and that Evans Cooling Systems, Inc., is a corporation in the business of research, development, design, manufacture and sale of automobile component parts and systems. The plaintiffs further allege that Evans invented an automotive cooling system called the Evans aqueous reverse flow cooling system (Evans system), and that the plaintiffs own the rights to the Evans system technology. The gravamen of the plaintiffs' complaint is their claim that General Motors misappropriated a trade secret of the Evans system during a demonstration of the technology at the General Motors test facility in March, 1989. The specific allegations are as follows.

Upon the request of General Motors, Evans entered into an agreement to perform a "black box" presentation of the Evans system, whereby the trade secret technologies would not be disclosed or submitted to General Motors. This presentation was done on March

16 and 17, 1989, for General Motors engineers and technicians. At some point during this two day demonstration, General Motors violated the "black box" agreement by examining the test car containing the Evans system and misappropriating the trade secret. General Motors later revealed the trade secret in publications, to the press, and by employing the system in its 1992 Corvette and various other automobiles. General Motors sold and continues to sell vehicles with engines using the plaintiffs' trade secret, including, inter alia, the Gen II and Gen III engines. This public disclosure by General Motors prevented the plaintiffs from obtaining patents on the Evans system, causing them "enormous economic loss." General Motors' actions also have caused Evans to lose personal and business credit, and to suffer psychological and physical damages, as well as loss of reputation.

The amended complaint asserts five counts. The plaintiffs demand damages for misappropriation of a trade secret in violation of the Connecticut Uniform Trade Secrets Act (CUTSA), General Statutes § 35-50 et seq., misappropriation of a trade secret under the common law of Michigan, violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42a-110a et seq., breach of contract, and breach of the implied covenant of good faith and fair dealing.[1]

Within one week after the commencement of this action in 1994, Evans Cooling Systems, Inc., filed a complaint in the United States District Court for the District of Connecticut in Hartford alleging a claim of patent infringement. On February 9, 1994, the state case

---

[1] On May 3, 2001, General Motors filed an answer and special defenses to the amended complaint, denying the plaintiffs' claims and asserting seventeen special defenses. These special defenses include the statute of frauds, the statute of limitations, waiver, laches, estoppel, failure to state claims on which relief can be granted, release, accord and satisfaction, collateral estoppel, license to make use of the trade secret and unclean hands.

was removed to the federal court, and the two cases were consolidated for trial.

On September 30, 1996, the District Court granted General Motors' motion for summary judgment. The court found that Evans filed the patent application on July 1, 1992, and that the patent was issued on October 26, 1993. The court further found that General Motors had placed engine cooling systems involving the plaintiffs' invention for sale in its 1992 Corvette models more than one year before Evans filed his patent application. On these facts, the District Court held that the patent application was not timely filed and that under the "on sale" provision of the patent statutes, the patent was invalid and could not support the plaintiffs' claim for patent infringement. *Evans Cooling Systems, Inc.* v. *General Motors Corp.*, 939 F. Sup. 154, 156 (D. Conn. 1996), aff'd, 125 F.3d 1448 (Fed. Cir. 1997), cert. denied, 522 U.S. 1115, 118 S. Ct. 1050, 140 L. Ed. 2d 113 (1998). "An inventor who does not promptly seek a patent runs the risk of losing the right to obtain a patent. Under 35 U.S.C. § 102 (b), an inventor loses his or her right to obtain a patent if the invention was 'on sale' more than one year prior to the date of the patent application. The on sale bar is not limited to sales by the inventor or one under his control, but may result from activities of a third party." (Internal quotation marks omitted.) *Evans Cooling Systems, Inc.* v. *General Motors Corp.*, supra, 155. The District Court ruling was affirmed on appeal. *Evans Cooling Systems, Inc.* v. *General Motors Corp.*, 125 F.3d 1448, 1453 (Fed. Cir. 1997), cert. denied, 522 U.S. 1115, 118 S. Ct. 1050, 140 L. Ed. 2d 113 (1998). After this affirmance, the case was remanded to the state court for adjudication of the plaintiffs' state law claims.

The initial complaint filed in this case in 1994 was primarily directed to General Motors' Gen II engine.

That engine was discontinued in 1997 and was succeeded by the Gen III engine. As previously discussed, the 1994 complaint was amended in April, 2001. This amended complaint asserts claims involving both the Gen II and Gen III engines, and became the operative complaint without objection.

In July, 2001, the plaintiffs filed a motion to compel discovery on issues involving the Gen III engine cooling system. General Motors objected, claiming that it would be unduly prejudicial to allow discovery on the Gen III engine because this engine was not introduced until 1997 and was not a part of the original complaint. On August 23, 2001, the court, *McWeeny, J.*, agreed with General Motors and denied the plaintiffs' motion to compel. The effect of that decision was to preclude the plaintiffs from asserting at trial any claims relating to the Gen III engine.

In August, 2003, following a court trial, Judge McWeeny ruled that the special defenses of license and release as asserted by General Motors completely barred the plaintiffs' claims for damages for misappropriation of a trade secret. The plaintiffs appealed from that decision. In March, 2006, our Supreme Court reversed the judgment of the trial court, holding that the "trial court improperly denied the plaintiffs their right to a jury trial on their trade secrets claims . . . ." *Evans* v. *General Motors Corp.*, 277 Conn. 496, 519, 893 A.2d 371 (2006). The case is now before this court for a jury trial on remand from the Supreme Court. Id., 526.

Immediately on remand, General Motors moved the trial court to preclude any evidence "pertaining to its Gen III engines at the retrial of this case because . . . such evidence is irrelevant to the plaintiffs' claims of misappropriation of trade secrets and allowance of the admission of such evidence at trial would prejudice [General Motors]." *Evans* v. *General Motors Corp.*,

Superior Court, judicial district of Waterbury, Complex Litigation Docket, Docket No. X06-CV-94-0156090 (August 28, 2006) (*Alander, J.*). In this motion, General Motors maintained that on the basis of the pleadings and discovery in the case, the plaintiffs' trade secret claims were limited to reverse flow engine cooling systems and that the Gen III engines do not use this type of cooling system. Id. In a decision issued on August 28, 2006, the court, *Alander, J.*, denied General Motors' motion to preclude, effectively reconsidering Judge McWeeny's earlier decision denying the plaintiffs' motion to compel discovery on the Gen III engine. The court found that even if the plaintiffs had limited their claims to the Gen II engine prior to April, 2001, they clearly had expanded their claims to include the Gen III engine in the amended complaint filed in April, 2001, without objection. Moreover, General Motors expressly addressed the Gen III claims in its May, 2001 answer to the amended complaint. The amended complaint alleges that the cooling venting techniques of the Evans system constitute a trade secret, that General Motors sold engines using this system, and that Gen III engines are among these engines. The court therefore concluded that evidence regarding the Gen III engine is relevant to the claims raised in the amended complaint and denied General Motors' motion to preclude this evidence. Id.

Now pending before the court is General Motors' motion for a protective order or, in the alternative, motion for summary judgment, regarding any claims by the plaintiffs that are based on the Gen III engine. The motion was heard on October 30, 2006. Since that date, supplemental briefing has occurred,[2] including

[2] On January 30, 2007, the plaintiffs filed a "Notice of Prior Written Decision," informing the court that the court had rendered an order on January 28, 2003, denying an earlier motion for partial summary judgment filed by the defendant on one of the issues now being raised by the defendant. In response, the court, *Stevens, J.*, issued a notice to the parties directing them to file supplemental memoranda as to the relevance or applicability of this

that requested by the court concerning the application of the federal preemption doctrine raised by General Motors in its memoranda, but not fully addressed by the parties. For the following reasons, General Motors' motion for a protective order is denied but the alternative motion for partial summary judgment is granted. Judgment shall enter as a dismissal as to all of the plaintiffs' claims for relief under all counts of the amended complaint arising after the issuance of the patent on October 26, 1993, which claims include the plaintiffs' demand for damages involving the Gen III engine.

I

## DISCUSSION

Summary judgment shall be rendered if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 17-49. The moving party has the burden of showing the absence of any genuine issue of material fact and therefore a right to summary judgment. *D.H.R. Construction Co.* v. *Donnelly*, 180 Conn. 430, 434, 429 A.2d 908 (1980). "[T]he party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." *Appleton* v. *Board of Education*, 254 Conn. 205, 209, 757 A.2d 1059 (2000). "A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) *Buell Industries, Inc.* v. *Greater New York Mutual Ins. Co.*, 259 Conn. 527, 556, 791 A.2d 489 (2002).

"In deciding a motion for summary judgment, the trial court must view the evidence in the light most

prior written decision (or other decisions) to the matters before the court. These memoranda were filed by March 13, 2007.

favorable to the nonmoving party." (Internal quotation marks omitted.) *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 450, 820 A.2d 258 (2003). "Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17-45]." (Internal quotation marks omitted.) *Martel* v. *Metropolitan District Commission*, 275 Conn. 38, 47, 881 A.2d 194 (2005). Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way." *Miller* v. *United Technologies Corp.*, 233 Conn. 732, 751, 660 A.2d 810 (1995).

In the alternative to the motion for summary judgment, General Motors has filed a motion for a protective order. A protective order is ordinarily directed to discovery issues. Practice Book § 13-5 permits a court, for good cause shown, to "make any order which justice requires to protect a party from annoyance, embarrassment, oppression, or undue burden or expense . . . ." General Motors' motion apparently seeks a protective order foreclosing any discovery regarding the Gen III engine to avoid "undue burden or expense." The broad nature of General Motors' arguments, however, as ultimately articulated in its supporting memoranda, sounds more in the form of either a motion in limine or a motion to preclude than a motion for a protective order. Because the parties do not address this distinction as to the scope of the available relief, the court will not dwell on it either, and will proceed to address the issues as framed and presented by the parties.

Additionally, there is authority that a defendant's motion for summary judgment may be directed only to counts of a complaint, rather than to claims within a count; see generally *Shelton Yacht & Cabana Club, Inc.* v. *Voccola*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV-01-0075380-S (February 2, 2007)

(*Stevens, J.*); and the Gen III claims are only a part of those claims addressing the Evans system. Because no objection has been asserted on this ground, the court will not engage in an analysis of this procedural issue either, except to observe that General Motors' arguments pertaining to the Gen III appear to be "sufficiently distinct and discrete" from the remaining claims so that they may be addressed by motion and severed from the other claims. Id.[3] Furthermore, as will be explained, the issues raised by the parties implicate federal preemption and the court's subject matter jurisdiction, and, therefore, they should be addressed now. Moreover, the age, history and complexity of this litigation all indicate that a resolution of the issues raised by the defendant's motions will advance the orderly and expeditious disposition of this litigation, and, by doing so, will promote the interests of justice.

II

General Motors argues that Gen III technology is not implicated in the plaintiffs' amended complaint and so it is entitled to an order precluding discovery regarding the Gen III, which, if granted, would preclude evidence at trial regarding the plaintiffs' Gen III claims. The court agrees with the plaintiffs that this motion rehashes the arguments that were considered and rejected by Judge

---

[3] The court in *Shelton Yacht & Cabana Club, Inc.* v. *Voccola*, supra, Superior Court, Docket No. CV-01-0075380-S, explains the following regarding this issue: "First, summary judgment cannot be entered as to an entire count when the count contains multiple causes of action and all of them are not addressed as part of the judgment. . . . Second, summary judgment is unavailable as to particular allegations in a count when such an adjudication does not dispose of an entire cause of action. . . . Third, summary judgment may be entered as to a single cause of action within a count containing multiple claims when the allegations are sufficiently distinct and discrete so that this cause of action can be severed from the remaining claims. Thus, in this last situation, it must be practical to enter final judgment with respect to that part of the claim for which summary judgment is sought and sever it from the remainder of the claim." (Citations omitted; internal quotation marks omitted.) Id.

Alander in his August, 2006 decision. Judge Alander found that the amended complaint asserts allegations regarding the Gen III and that General Motors' answer responded to these claims. Judge Alander's decision is the law of the case, and the court finds no reason or basis to disturb it. That decision denying General Motors' earlier motion for a protective order presents the correct disposition of the question whether the amended complaint asserts claims involving General Motors' Gen III engine. Accordingly, General Motors' motion for a protective order is denied.

## III

In the alternative, General Motors moves for judgment as a matter of law on all claims asserted in the amended complaint that are premised on the Gen III engine. General Motors' first contention in support of this motion is that the Gen III technology does not utilize or implicate the trade secret of the Evans system technology.[4] General Motors maintains that in the initial complaint and throughout this litigation, the plaintiffs have characterized their "reverse flow" cooling system as one involving the flow of motor coolant first to the cylinder heads and then to the cylinder block. General Motors explains that the Gen III uses a different technology: the coolant first cools the block and then flows upward to the cylinder head. In response, the plaintiffs argue that the dynamics of the Gen III engine are too narrowly described by General Motors. The plaintiffs contend that these dynamics are more fully described

---

[4] The court notes that General Motors' analysis appears to have been accepted by Judge McWeeny in the court's August 31, 2001, decision denying the plaintiffs' motion to compel discovery on the Gen III engines. As previously discussed, this decision is no longer the law of the case because it was rejected by Judge Alander's August, 2006 ruling denying General Motors' motion to preclude. Nevertheless, to the extent that either the holding or the reasoning of this earlier August, 2001 decision has any continued applicability to the issues raised by the present motions, the court respectfully rejects and declines to follow it for the reasons discussed previously.

as involving the flow of the coolant to the engine block, then to the cylinder head, and then downward to a coolant outlet in the radiator. The plaintiffs insist that this design is only accomplished by the use of their trade secret. In short, the plaintiffs claim that both the Gen III and the earlier Gen II cooling systems involve different applications of the same trade secret—the mechanisms of a restricted vent cooling system involving a downward flow of the coolant.

The court finds that the question whether the Gen III engine involves the continued use of the same trade secret to address a different design problem, or involves an entirely different technical design that is not based on the plaintiffs' trade secret, raises a disputed issue of fact that is not amenable to summary disposition. General Motors attempts to establish that any dispute on this issue is foreclosed by prior statements and claims made by the plaintiffs in earlier pleadings and discovery, in which the invention is described as being limited to head first, reverse flow cooling systems. Most of these prior statements appear to have been made in the context of the alleged misappropriation and use of the trade secret as perceived by the plaintiffs at that time—in the Gen II engine. In any event, although such statements may present evidentiary issues (for example, as inconsistent statements or admissions), under the particular circumstances of this case, they do not present such conclusive or definitive factual statements to allow disposition of this contested issue on a motion for summary judgment. See generally *Collum* v. *Chapin*, 40 Conn. App. 449, 450 n.2, 671 A.2d 1329 (1996) (deposition testimony should be considered as providing evidentiary, rather than judicial, admissions); *Gemme* v. *Goldberg*, 31 Conn. App. 527, 539, 626 A.2d 318 (1993) (statements in superseded pleadings may be admissible as evidentiary, as compared to judicial, admissions).

The court's finding that this disputed fact exists does not end the court's consideration of General Motors' motion for summary judgment because to preclude summary disposition, the fact in dispute must be material. As will be addressed, even if the court assumes arguendo that the Gen III engine involves the use of the plaintiffs' trade secrets, General Motors is still entitled, as a matter of law, to summary judgment as to the plaintiffs' Gen III claims.

### IV

To review the relevant facts, Evans filed a patent application in 1992. The application was granted and the patent was issued in 1993. In 1996, the District Court found this patent invalid under the on sale bar of federal patent law because General Motors and its dealers had placed the patented invention on sale through its vehicles more than one year prior to Evans' patent application. *Evans Cooling Systems, Inc.* v. *General Motors Corp.,* supra, 939 F. Sup. 154. The first two counts of the operative complaint allege misappropriation of a trade secret under CUTSA and Michigan common law. As part of their claims in these counts, the plaintiffs maintain that their trade secret was protected by the patent and that General Motors' wrongful misappropriation and use of their trade secret invalidated the patent. The plaintiffs' demand for damages includes a claim for monetary losses premised on General Motors' wrongful actions that caused the invalidation of their patent rights.

As a preliminary matter, the court notes that there are fundamental differences between the legal protections afforded by patent versus trade secret law. A patent owner acquires a time limited monopoly over the patented technology, and patent infringement can occur through the use of that technology by any means. The owner of a trade secret, on the other hand, is protected

only against improper appropriation of the secret and subsequent use of a secret wrongly acquired. An owner of a trade secret may forgo resort to patent protection, but this choice risks the loss of the secret by voluntary use and disclosure or through legitimate, good faith means, such as reverse engineering.

The law is well established that voluntary disclosure destroys the protection afforded a trade secret, and "publication of [the] patent . . . is considered the abandonment of the secrecy." *Plastic & Metal Fabricators, Inc.* v. *Roy,* 163 Conn. 257, 266 n.4, 303 A.2d 725 (1972). The rule that a patent discloses a trade secret and destroys its protected nature applies even when the disclosure is the result of a patent that is subsequently found invalid. *Timely Products Corp.* v. *Arron,* 523 F.2d 288, 304 (2d Cir. 1975); *Conmar Products Corp.* v. *Universal Slide Fastener Co.,* 172 F.2d 150, 155–56 (2d Cir. 1949). Consequently, the general rule is that the public disclosure of a trade secret through a patent creates a cutoff date that thereafter precludes the recovery of damages under state law for the wrongful use of a trade secret. *Timely Products Corp.* v. *Arron,* supra, 304; accord *Forest Laboratories, Inc.* v. *Pillsbury Co.,* 452 F.2d 621, 624 (7th Cir. 1971) ("[s]ince the element of secrecy evaporated with the issuance of the patent, the district court properly held that [the defendant] should not be held liable after the issuance of the patent"). These principles flow from basic principles of federal patent law. See generally *Kewanee Oil Co.* v. *Bicron Corp.,* 416 U.S. 470, 94 S. Ct. 1879, 40 L. Ed. 2d 315 (1974).[5]

---

[5] In this regard, the United States Supreme Court in *Kewanee Oil Co.* v. *Bicron Corp.,* supra, 416 U.S. 481, explains that "[w]hen a patent is granted and the information contained in it is circulated to the general public and those especially skilled in the trade, such additions to the general store of knowledge are of such importance to the public weal that the Federal Government is willing to pay the high price of 17 years of exclusive use for its disclosure, which disclosure, it is assumed, will stimulate ideas and the eventual development of further significant advances in the art. The Court

On the basis of these general principles, General Motors argues that because the plaintiffs acquired their patent in 1993, and the Gen III engine was not introduced until 1997, the plaintiffs' trade secret claims asserted in counts one and two cannot be maintained as to the Gen III engine. Indeed, General Motors contends that after the patent was issued, the plaintiffs were precluded from seeking any damages that are based on any claims of misappropriation of the trade secret.

General Motors' reasoning is straightforward. There is no dispute that the trade secret at issue was fully disclosed in the patent acquired by Evans in 1993. This voluntary disclosure destroyed the secretive protection afforded the plaintiffs' invention. As a consequence, the trade secret status of the Evans' system was lost and could no longer form the basis for the damages sought by the plaintiffs in their amended complaint.

The plaintiffs do not contest the point that the trade secret at issue was disclosed when the patent issued, and they also do not contest the general proposition that the processes so disclosed may be used by the general public. The plaintiffs maintain, however, that the defendant stands differently from other members of the public because of the defendant's wrongdoing. According to the plaintiffs, General Motors' misappropriation of the trade secret caused the plaintiffs' loss of their patent rights. The plaintiffs insist that General Motors should not be allowed to shield itself from liability on the basis of its wrongful conduct and that General Motors should be held liable for the losses caused by its alleged violation of trade secret law, including those damages resulting from the lost patent rights.

In the procedural context of this motion for summary judgment, the issues raised by the parties require the

has also articulated another policy of the patent law: that which is in the public domain cannot be removed therefrom by action of the States."

court to assume arguendo the truth of certain facts: that General Motors wrongfully appropriated the plaintiffs' trade secret and then wrongfully used the trade secret first in the Gen II engine before the issuance of the patent, and then thereafter in this and other applications, including the Gen III engine. Under these assumed facts, the precise question presented is whether a defendant, who has wrongly appropriated and used a trade secret, may be held liable for the damages under state law flowing from this misappropriation after a patent has issued and been found invalid. In evaluating the parties' positions in the context of the interplay between trade secret law and patent law, the court must answer this question in the negative.

This dispute between the parties involves a conflict among the federal circuit courts that has been brewing for many years. General Motors relies on a rule long followed in the United States Court of Appeals for the Second Circuit, which holds that once a trade secret has been disclosed through the issuance of a patent, what is disclosed may be used not only by the general public, but also by a person charged with wrongly appropriating the trade secret prior to the patent disclosure. *Timely Products Corp.* v. *Arron,* supra, 523 F.2d 288; *Conmar Products Corp.* v. *Universal Slide Fastener Co.,* supra, 172 F.2d 150.

"[I]t is well established in [the Second] Circuit that one who is alleged to have wrongly utilized a trade secret is accountable under the doctrine of unfair competition only for such use as is made of the secret before it is made public by the issuance of a patent thereon. . . . After such disclosure, the use of that source of information would not, apart from the risk of infringement, [be wrongful]. . . . It may be that, ultimately, the defendants will be found liable under the doctrine of unfair competition for their alleged use of [the trade secret] prior to . . . the date a patent issued thereon.

However, their prospective use of the [trade secret] would be actionable only as patent infringement, not as unfair competition." (Citations omitted; internal quotation marks omitted.) *Tempo Instrument, Inc.* v. *Logitek, Inc.*, 229 F. Sup. 1, 3 (E.D.N.Y. 1964).

The plaintiffs, on the other hand, urge the court to follow an opposing rule, established in the Sixth and Seventh Circuits, holding that a person misappropriating a trade secret may be held liable for the wrongful use of the trade secret even after the issuance of a patent because "by its inequitable conduct the [misappropriator] has precluded itself from enjoying the rights of the general public to the patent disclosure . . . ." *Shellmar Products Co.* v. *Allen-Qualley Co.*, 87 F.2d 104, 108 (7th Cir. 1936), cert. denied, 301 U.S. 695, 57 S. Ct. 923, 81 L. Ed. 1350 (1937); accord *A. O. Smith Corp.* v. *Petroleum Iron Works Co.*, 74 F.2d 934, 935 (6th Cir. 1935); but cf. *Forest Laboratories, Inc.* v. *Pillsbury Co.*, supra, 452 F.2d 624 n.4 (questioning the continued viability of *Shellmar Products Co.* v. *Allen-Qualley Co.*, supra, 104).

If the court were required simply to choose between these conflicting authorities, the court would be inclined to agree with those relied on by General Motors, rather than the plaintiffs, on the basis of the guidance provided by our Supreme Court in *Plastic & Metal Fabricators, Inc.* v. *Roy*, supra, 163 Conn. 257. The *Plastic & Metal Fabricators, Inc.*, defendant was a misappropriator of a trade secret who appealed from the trial court's decision enjoining him from using or disclosing the trade secret, arguing that the state injunction had to yield to federal supremacy in light of the parties' patent applications pending at the time of trial. The Supreme Court held that there was no conflict between federal patent law and the state injunction protecting the trade secret when the injunction was applied during the period when the patent application

was pending. Id., 274–75. The clear implication of the Supreme Court's reasoning is that the state protection of the trade secret would be preempted by federal law if it were extended past the date on which the patent was issued, and this reasoning is at odds with the plaintiffs' position that damages in this case may extend past the issuance of the patent.

The plaintiffs, however, press another point. The plaintiffs insist that the cases relied on by General Motors are distinguishable from the facts here because in this case, General Motors' actions caused the invalidation of the patent.[6] The parties have not cited, and the court has not located, any case squarely addressing circumstances such as those present here, in which the defendant is not only charged with using the misappropriated trade secret after the issuance of the patent but also where the defendant's wrongful use of the trade secret is claimed to have caused the loss of the patent. The court appreciates the equitable nature or gravity of the plaintiffs' position but nevertheless finds that federal supremacy renders the distinction on which they rely legally insignificant.

First, the plaintiffs' insistence that General Motors caused the invalidation of their patent does not provide a complete characterization of the events. General

[6] More fully, the plaintiffs state their argument as follows: "[General Motors] perversely contends that issuance of Evans' patent served to absolve [General Motors] of any responsibility for damages [relating to Gen III], even though the patent was doomed precisely because [General Motors] had offered his technology for sale just over a year earlier . . . . [General Motors'] position defies logic and subverts fundamental standards of fairness by rewarding the misappropriator for destroying the owner's patent rights in addition to destroying the owner's right to keep his technology secret. . . . No case cited by [General Motors] supports the proposition that a party who misappropriates a trade secret, and thereby precludes the rightful owner from obtaining a valid patent, can thereby avoid damages under CUTSA by relying on the fact that—due to its own wrongdoing—the trade secret was publicly disclosed in an unprotected manner."

Motors' appropriation of the purported trade secret in 1989 as alleged in the amended complaint did not result in the invalidation of the patent. Nor did the mere use of the cooling system in General Motors vehicles offered for sale in 1991 cause this invalidation. The invalidation was caused by the timing of General Motors' use in relation to the filing of the patent application. As explained by the District Court, the plaintiffs failed to protect their patent rights by waiting too long to file the patent application.

"Evans, the inventor named in the '636 patent, claims that he reduced the patented cooling system to practice by July 1986. However, he did not file an application for a patent until approximately six years later. By the time Evans filed his application, [General Motors'] dealers and retail customers had come to believe that the 1992 Corvette and its LT1 engine cooling system were freely available. In these circumstances, application of the on sale bar serves the important policy of encouraging early filing of patent applications as well as the policy against removing inventions from the public domain." *Evans Cooling Systems, Inc.* v. *General Motors Corp.*, supra, 939 F. Sup. 156.

In this context, federal preemption is implicated by the plaintiffs' amended complaint because the plaintiffs are expressly seeking remedies under state law to compensate them for damages flowing from the invalidation of the patent covering their trade secret.[7] This relief is precluded under the federal preemption doctrine because by electing to seek the protection of patent law for their invention, the extent of any protection and the remedy for any violation are governed by federal

[7] In responding to General Motors' motion for partial summary judgment, the plaintiffs explain in their supplemental brief that "the lost patent royalties *measure* the recoverable damages" and that "the *measure of damages itself* is precisely the value of the royalties that would have probably accrued had a valid patent been issued." (Emphasis in original.)

patent law, not by the amended complaint's causes of action asserted under state law. See generally *Plastic & Metal Fabricators, Inc.* v. *Roy*, supra, 163 Conn. 269–75 (discussing availability of state law protection of trade secrets prior to issuance of patent and preemption of state protection afterward).

Although there is no case on point, the application of the federal preemption doctrine to preclude the state law remedies sought by the plaintiffs follows from fundamental, constitutional principles that are now too well settled for dispute. Patent law does not preempt the entire field of trade secret protection. *Kewanee Oil Co.* v. *Bicron Corp.*, supra, 416 U.S. 470. Federal patent law and state trade secret laws co-exist and complement each other. Id. Nevertheless, under the supremacy clause, any conflict between federal and state protections is resolved by federal preemption of state law. See *Bonito Boats, Inc.* v. *Thunder Craft Boats, Inc.*, 489 U.S. 141, 146–53, 156, 109 S. Ct. 971, 103 L. Ed. 2d 118 (1989) ("[s]tates may not offer patent-like protection to intellectual creations which would otherwise remain unprotected as a matter of federal law"); *Kewanee Oil Co.* v. *Bicron Corp.*, supra, 416 U.S. 480 (although patent law does not preempt field of trade secret law, "if the scheme of protection developed by [state] law respecting trade secrets clashes with the objectives of the federal patent laws . . . then the state law must fall" [citation omitted; internal quotation marks omitted]); *Lear, Inc.* v. *Adkins*, 395 U.S. 653, 674, 89 S. Ct. 1902, 23 L. Ed. 2d 610 (1969) (federal patent law prevents application of state contract law to require licensee, who has acquired special access to inventor's ideas before issuance of inventor's patent, to pay royalties under license after patent found invalid); *Sears, Roebuck & Co.* v. *Stiffel Co.*, 376 U.S. 225, 231–32, 84 S. Ct. 784, 11 L. Ed. 2d 661 (1964) (in lawsuit for state law

unfair competition and for patent infringement, injunctive relief for unfair competition preempted and unavailable even upon finding that patent invalid); *Compco Corp.* v. *Day-Brite Lighting, Inc.*, 376 U.S. 234, 237–38, 84 S. Ct. 779, 11 L. Ed. 2d 669 (1964) (federal patent policy precludes injunction or accounting for damages under state unfair competition law against defendant for copying design not entitled to patent protection). Consequently, the established rule is that "[i]f a patent fully discloses matter that the patentee later asserts to be a trade secret, appearance of that matter in a patent will, at least prospectively from the patent's issuance, preempt state relief under trade secret or other principles." 1 R. Milgram, Trade Secrets (2007) § 1.01 [3] [a], p. 1-128.1.

Furthermore, the rule holding that the disclosure of a trade secret through the issuance of a patent allows use of the secret by the general public, including a prior misappropriator, is more consistent and compatible with the policies of patent law. Patent law "requires that all ideas in general circulation be dedicated to the common good unless they are protected by a valid patent." *Lear, Inc.* v. *Adkins*, supra, 395 U.S. 668. Consequently, once they are placed in the public domain, the ideas should not be removed. *Evans Cooling Systems, Inc.* v. *General Motors Corp.*, supra, 939 F. Sup. 156 (a policy of patent law is "against removing inventions from the public domain"). These policies are supported and furthered by the permission granted to members of the general public, including a misappropriator, to use disclosures resulting from the issuance of a patent. As explained by the Second Circuit in *Conmar Products Corp.* v. *Universal Slide Fastener Co.*, supra, 172 F.2d 156, any theory precluding a misappropriator from using material disclosed by a patent "must rest upon the theory that it is a proper penalty for the original wrong to deny the wrongdoer resort to the patent; and

for that we can find no support in principle. Thus, any possible liability for exploiting . . . the patents . . . disclosed, ended with their issue." Id.; accord *Rockwell Graphic Systems, Inc.* v. *DEV Industries, Inc.*, 925 F.2d 174, 179 (7th Cir. 1991) ("if the plaintiff has allowed his trade secret to fall into the public domain, he would enjoy a windfall if permitted to recover damages merely because the defendant took the secret from him, rather than from the public domain as it could have done with impunity"); *Van Products Co.* v. *General Welding & Fabricating Co.*, 419 Pa. 248, 268, 213 A.2d 769 (1965) ("[w]e feel that the authorities holding that public dis-closures destroy plaintiff's right to maintain a cause of action to preserve his trade 'secret' as against a compet-ing former employee who has violated a duty of confi-dence are more sound in theory and practice than those continuing to look to the relationship of the parties as a basis for the action"). In short, a person who voluntarily chooses to forgo protection of his trade secret by acquir-ing a patent likewise chooses to risk disclosure and use of his trade secret through the operation of patent law and its policies. "The inventor is put to his election; he can keep his secret hidden and run the risk of indepen-dent discovery by others, or he can disclose his secret to the world by Letters Patent and receive in return from the government a monopoly for seventeen years." Id., 265.

The plaintiffs' contrary arguments are rejected. The plaintiffs' reliance on dicta in *BondPro Corp.* v. *Siemens Power Generation, Inc.*, 463 F.3d 702 (7th Cir. 2006), is misplaced. In the *BondPro Corp.* case, the patent was obtained by the misappropriator, and, as a conse-quence, the court opined that a trade secret claim remained viable by this involuntary disclosure of the secret through the issuance of the patent. In this case, Evans, not General Motors, applied for the patent and voluntarily disclosed the trade secret through his patent

application. There is no conflict between state and federal law for holding a defendant liable under state law when it misappropriates a trade secret and then uses the secret to obtain a patent. Trade secret protection is not lost when "the holder of the trade secret did not make an election to obtain a patent, but instead it was [the defendants] who had misappropriated the trade secrets and secured the patent." *Syntex Ophthalmics, Inc.* v. *Tsuetaki*, 701 F.2d 677, 683 (7th Cir. 1983).

The plaintiffs also contend that their right to pursue state remedies was supported and sanctioned by the federal Circuit Court decision affirming the order invalidating the patent. The Circuit Court stated that "Evans is not without recourse if [General Motors] in fact misappropriated his invention. Evans would have an appropriate remedy in state court for misappropriation of a trade secret." *Evans Cooling Systems, Inc.* v. *General Motors Corp.*, supra, 125 F.3d 1454. In making this statement, the federal court was not considering the precise question now before this court, but in any event, nothing in the court's present decision conflicts with the federal court's statement. The plaintiffs can maintain their trade secret claims as appropriate under applicable law, and federal preemption allows the plaintiffs to pursue their state claims from the period before, but not after, the trade secret became subject to patent law. See generally *Plastic & Metal Fabricators, Inc.* v. *Roy*, supra, 163 Conn. 257.

The plaintiffs further indicate that federal preemption was previously raised by General Motors in a prior motion for partial summary judgment that was denied by Judge McWeeny, without opinion. The motion may have been denied on this issue because, as previously discussed, Judge McWeeny had ruled earlier that the Gen III claims were outside of the pleadings and not part of the case. In any event, on the basis of the present review of this issue, the court respectfully rejects any

prior ruling that may be contrary to the court's holding today. Appreciating the principles of the law of the case, the court has inherent authority to reconsider and review its prior rulings, and any ruling that federal preemption is inapplicable in this case would clearly be erroneous and would represent a manifest injustice, subject to reversal, if followed.[8]

Moreover, it is important to note that although the issue is being raised in the context of a motion for summary judgment, rather than in a motion to dismiss, federal preemption implicates this court's subject matter jurisdiction, and, therefore, it can be raised at any time, even by the court. See *Lawton* v. *Weiner*, 91 Conn. App. 698, 714, 882 A.2d 151 (2005) ("federal preemption implicates the court's subject matter jurisdiction").

In summary, even if the court assumes the truth of the amended complaint's factual allegations, the plaintiffs are bound by the protections afforded by patent law to acquire relief for the wrongful use or loss of rights secured or covered by a patent. The federal preemption doctrine precludes the plaintiffs' reliance on state remedies once the operation of patent law conflicts with such claimed relief. Any other rule would frustrate or undermine the congressional policies sought to be achieved by the patent statutes. In this particular case, as previously stated, "application of the on sale bar serves the important policy of encouraging early filing

---

[8] Under the law of the case, judges are hesitant to revisit what has already been decided in the proceedings of a case and generally refrain from doing so. Nevertheless, "[a] judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if he had himself made the original decision. . . . This principle has been frequently applied to an earlier ruling during the pleading stage of a case . . . . According to the generally accepted view, one judge may, in a proper case, vacate, modify, or depart from an interlocutory order or ruling of another judge in the same case, upon a question of law." (Internal quotation marks omitted.) *Johnson* v. *Atkinson*, 283 Conn. 243, 249, 926 A.2d 656 (2007).

of patent applications as well as the policy against removing inventions from the public domain." *Evans Cooling Systems, Inc.* v. *General Motors Corp.*, supra, 939 F. Sup. 156.

Indeed, the federal Circuit Court explicitly considered and rejected the argument of Evans Cooling Systems, Inc., that an exception to the on sale bar should be created so that the bar would not preclude a patent infringement claim against General Motors that is based on General Motors' misappropriation and use of the trade secret. *Evans Cooling Systems, Inc.* v. *General Motors Corp.*, supra, 125 F.3d 1452–53.[9] Congress has by statute established the on sale bar without the exception advocated by the plaintiffs, and the court cannot envision a clearer or more direct conflict with federal law than state relief being available to recover damages for the same relief denied under federal law.

## CONCLUSION

General Motors' motion for a protective order is denied. The alternative motion for partial summary judgment raises an issue of subject matter jurisdiction, and, therefore, must be treated as a motion to dismiss. See *Lewis* v. *Chelsea G.C.A. Realty Partnership, L.P.*,

---

[9] The Circuit Court states the following on this issue: "The prior-public-use proviso . . . contains no qualification or exception which limits the nature of the public use. We think that Congress intended that if an inventor does not protect his discovery by an application for a patent within the period prescribed by the [federal law], and an intervening public use arises from any source whatsoever, the inventor must be barred from a patent or from the fruits of his monopoly, if a patent has issued to him. There is not a single word in the statute which would tend to put an inventor, whose disclosures have been pirated, in any different position from one who has permitted the use of his processes. . . . [I]solated instances of injustice may result if the law is strictly applied, but the inventor's remedy is sure. He is master of the situation and by prompt action [in filing a patent application] can protect himself fully and render the defense of prior public use [impossible . . . .]." *Evans Cooling Systems, Inc.* v. *General Motors Corp.*, supra, 125 F.3d 1453, quoting *Lorenz* v. *Colgate-Palmolive-Peet Co.*, 167 F.2d 423, 429–30 (3d Cir. 1948).

86 Conn. App. 596, 607, 862 A.2d 368 (2004) (form of judgment for lack of subject matter jurisdiction raised through summary judgment motion should be judgment of dismissal), cert. denied, 273 Conn. 909, 870 A.2d 1079 (2005). Accordingly, General Motors' motion for partial summary judgment is granted and partial judgment of dismissal shall enter as to all of the plaintiffs' claims for relief under all counts of the amended complaint arising after the issuance of the patent on October 26, 1993, which claims include the plaintiffs' demand for damages involving the Gen III engine.[10]

[10] General Motors alternatively argues that all the plaintiffs' causes of action involving Gen III are barred by the applicable statutes of limitation. In light of the disposition in this matter, the court does not reach General Motors' statute of limitations arguments.