# PLASTIC AND METAL FABRICATORS, INC. *v.* CLARENCE H. ROY*

HOUSE, C. J., RYAN, SHAPIRO, LOISELLE and MACDONALD, JS.

* Because of the subject-matter of this appeal, the briefs of the parties are not included in the bound volume of Connecticut Supreme Court Records and Briefs.

Argued May 2—decided June 6, 1972

*David L. Belt,* with whom was *Ira B. Grudberg,* for the appellant (defendant).

*Donald G. Walsh,* with whom was *William M. Mack,* for the appellee (plaintiff).

SHAPIRO, J.   On October 16, 1967, the plaintiff, Plastic and Metal Fabricators, Inc., instituted this action seeking damages and injunctive relief restraining the defendant, Clarence H. Roy, from using or disclosing its trade secret disclosed in confidence to the defendant.   On December 1, 1967, the trial court, on motion of the plaintiff, issued an order that all proceedings be held in camera and that all

testimony concerning the trade secret be sealed and withheld from the general public. On September 27, 1968, the case was referred to a state referee for hearing and judgment. See General Statutes § 52-434a.

Judgment for the plaintiff was rendered February 6, 1970, by the referee, sitting as a court, and an injunction was issued enjoining and restraining the defendant from using or disclosing the trade secret.[1] The defendant has appealed to this court from that judgment.

---

[1] Clause (5) of the injunction provides that: "Said injunction, subject however to modification at any time by this court upon due notice and hearing, shall be in full force and effect until plaintiff's application for a patent, involving the unique feature of plaintiff's process, shall have been heard and finally determined." Although it has been held that trade secrets need not meet the statutory criteria of the patent laws in order to be protected; *A. O. Smith Corporation* v. *Petroleum Iron Works Co.*, 73 F.2d 531, 538 (6th Cir.), *Booth* v. *Stutz Motor Car Co.*, 56 F.2d 962 (7th Cir.), *Sarkes Tarzian, Inc.* v. *Audio Devices, Inc.*, 166 F. Sup. 250, 265 (S.D. Cal.), *Russell* v. *Wall Wire Products Co.*, 346 Mich. 581, 78 N.W.2d 149, 154, Doerfer, "The Limits of Trade Secret Law Imposed by Federal Patent and Antitrust Supremacy," 80 Harv. L. Rev. 1432, 1434, Ellis, Trade Secrets § 30, 1 Nims, Unfair Competition and Trade-Marks § 142; it would appear that this injunction protecting the trade secret will terminate if the plaintiff's application is finally rejected. The injunction is silent as to when the injunction will terminate if the plaintiff chooses to abandon his patent application, thus retaining his secret. 37 C.F.R. § 1.14 (b); compare *Conmar Products Corporation* v. *Universal Slide Fastener Co.*, 172 F.2d 150 (2d Cir.) (wrongdoer relieved of liability after secret becomes public knowledge) with *Shellmar Products* v. *Allen-Qualley Co.*, 87 F.2d 104 (7th Cir.), cert. denied, 301 U.S. 695, 57 S. Ct. 923, 81 L. Ed. 1350 (wrongdoer enjoined in perpetuity once he has misused); see Turner, Law of Trade Secrets, part VI.

Since the plaintiff has filed no cross appeal (see Practice Book § 607) and the defendant in his appeal has directed no assignment of error to the provision of the injunction, these issues are not before us and we need not pass on them, but merely make observation regarding them while confining our discussion to the period during which the plaintiff's patent application is pending.

The court's finding of fact, which is not subject to material correction, is reproduced as follows in sufficient measure to allow the disposition of this appeal while maintaining the secrecy of the plaintiff's trade secret: In 1964, the plaintiff, a corporation engaged in the manufacture of metal finishing and plating equipment and sundry products, expanded its activities into the area of air and water pollution control products. In that year it discovered a new, compact and fairly inexpensive process which dramatically increased the efficiency with which metal contaminates could be removed from waste water.

Through a mutual acquaintance, the defendant met the plaintiff's representatives, and on several occasions they discussed the defendant's possible role as a consultant to the plaintiff in connection with its various air and water pollution control processes and devices. The defendant, who had received his Ph.D degree in chemistry from Auburn University in 1960, since that time had experience in chemical research for several large companies and research organizations, with specific experience in the electrochemical field. The plaintiff informed the defendant in general terms about its water pollution control process that it had discovered in 1964. The defendant expressed his interest and told of his immediate plans to set up a laboratory in the town of Seymour. In September, 1966, the defendant established his laboratories with help from the plaintiff in the form of materials and labor, and the defendant undertook to render technical assistance to the plaintiff in connection with the 1964 waste-water process. Although the parties never arrived at a definite agreement about how the defendant was to be paid for these services, the parties mutually understood that the defendant would undertake these services

with help from the plaintiff and that a reasonable arrangement for payment of the defendant would be worked out later.

By February, 1967, the plaintiff had given the defendant reports on its waste-water process and had explained the process to him, advising him that it was disclosing the process in confidence. The defendant, in that month, first saw a test of the plaintiff's process at its plant. At this time, the process was unknown to anyone except the plaintiff's employees and consultants. It is undisputed that the defendant occupied a confidential relationship to the plaintiff and that he understood that the process was being disclosed to him in confidence.

During the following weeks the defendant tested the plaintiff's process in his own laboratory, although his laboratory journal has a significant hiatus in it for the period from February 22, 1967, to March 28, 1967. In March, 1967, the plaintiff's representative met with the defendant and jointly arrived at the name "Rasar" as a commercial name for the process. The parties continued to cooperate during the spring and summer of 1967 in further testing of the Rasar process. The defendant never received any money from the plaintiff for the purpose of developing the plaintiff's waste-water process. In the course of the various experiments on the Rasar process, however, the plaintiff furnished to the defendant materials, services and supplies in an amount of substantial value, for which the plaintiff made no charge and for which the defendant never offered or asked to pay. The plaintiff's representative visited the defendant's laboratory on a number of occasions during the period to witness the defendant's progress and to confer with him about it.

The September 25, 1967, issue of Air and Water

News, a publication circulated to those interested in the pollution control field, contained an article reporting that the defendant claimed to have discovered the Rasar process. This article was the first notice that the plaintiff had that the defendant was claiming to own the process. An immediate confrontation and falling-out resulted between the parties and the present suit was commenced on October 16, 1967.

In September, 1967, Roy filed a patent application on the Rasar process as claimed by him to be his own. On October 1, 1968, the plaintiff also filed a patent application on its Rasar process. Thus, when trial hearings started on October 28, 1968, before the court, both applications for patents had already been made to the United States Patent Office.

The plaintiff's process incorporated a unique feature vital to its performance which was not disclosed in the prior art, and the plaintiff took reasonably prudent steps to maintain the secrecy of its process by disclosing it only to its key employees, and in confidence to its patent attorney and technical consultants. It did not keep the units used in the Rasar process in a part of its plant accessible to the public. As of February, 1967, when the defendant saw the process, it was unknown to anyone except the plaintiff's employees and consultants.

An exhibit relating to the plaintiff's process was attached to the writ, summons and complaint which was served on the defendant. This exhibit, together with the writ, summons, complaint and other pleadings and motions, was on file in the office of the clerk until the time of trial before the court.

The court reached the following conclusions, which are supported by the findings: The plaintiff's Rasar process is a trade secret which it is entitled to have

protected. The defendant first learned of this secret process in February, 1967, when he was shown the process in confidence. The plaintiff's sole purpose in disclosing its process to the defendant was in the reasonable expectation, apparent to the defendant, that he would render consulting services while their negotiations from time to time matured into an acceptable understanding whereby both parties would participate in the development and exploitation of the plaintiff's process with benefit to both sides. The defendant worked on the plaintiff's process and used and freely accepted the plaintiff's facilities and supplies doing nothing to disabuse the plaintiff of this reasonable expectation until the defendant's announced claim of ownership of the process in the September 25, 1967, issue of a trade magazine. The essence of the plaintiff's secret process was learned in confidence by the defendant from the plaintiff. It was not previously known to the defendant until learned in confidence from the plaintiff and was not known to the previous state of the art. The process for treatment of dilute waste water, as claimed by both the plaintiff and defendant, would not successfully operate without the incorporation of the plaintiff's trade secret. The variations made by the defendant to the plaintiff's process are minor in nature and do not at all affect the basic and critical character of the essential and unique feature of the plaintiff's process first learned by the defendant from the plaintiff's disclosure in confidence. The defendant appropriated the essence of the plaintiff's process and wrongfully claimed it for his own. The defendant's attempted use for his own benefit of the essential and unique feature of the plaintiff's process was a breach of the confidence and faith in which the process was reasonably disclosed to him. The bring-

ing of the suit with an exhibit relative to the plaintiff's trade secret attached to the complaint has not impaired the secret character of the plaintiff's process.

The court further concluded that it had jurisdiction of this case, being a suit based on appropriation of a trade secret in breach of a confidential disclosure, under the equitable jurisdiction and powers of the court, and that the patentability of the Rasar process was not involved.

The defendant assigns as error the overruling by the trial court of its claim of law that the plaintiff's process was not a trade secret.[2] In support of this assignment of error, the defendant first argues that the plaintiff's secret process is in fact not a secret by virtue of its disclosure in prior patents. The court in this case, having examined the patents which the defendant claims disclose the plaintiff's trade secret, concluded that no disclosures were made therein of the plaintiff's process.

In *Town & Country House & Homes Service, Inc.* v. *Evans,* 150 Conn. 314, 318–19, 189 A.2d 390, we observed a basic rule of the law of trade secrets that "[m]atters of public knowledge or of general knowledge in an industry cannot be appropriated by one

---

[2] In *Allen Mfg. Co.* v. *Loika,* 145 Conn. 509, 515–16, 144 A.2d 306, we observed that definitions of "trade secrets" abound in the reported cases, and cited that of the Restatement, 4 Torts § 757, comment b: "A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a pattern for a machine or other device, or a list of customers. . . . A trade secret is a process or device for continuous use in the operation of the business." See also Marcuse, "The Protection of Trade Secrets," 36 Conn. B.J. 348, 357.

as his secret. . . . [A] substantial element of secrecy must exist, to the extent that there would be difficulty in acquiring the information except by the use of improper means."[3]  See also *Masline v. New York, N.H. & H.R. Co.,* 95 Conn. 702, 711, 112 A. 639; *Sarkes Tarzian, Inc.* v. *Audio Devices, Inc.,* 166 F. Sup. 250, 265 (S.D. Cal.). A matter may be generally known through its disclosure in market goods *(Schavoir* v. *American Re-Bonded Leather Co.,* 104 Conn. 472, 476, 133 A. 582; *Futurecraft Corporation* v. *Clary Corporation,* 205 Cal. App. 2d 279, 23 Cal. Rptr. 198; *Speedry Chemical Products, Inc.* v. *Carter's Ink Co.,* 306 F.2d 328, 331 [2d Cir.]; *Bimba Mfg. Co.* v. *Starz Cylinder Co.,* 164 U.S.P.Q. 304, 308; *Van Products Co.* v. *General Welding & Fabricating Co.,* 419 Pa. 248, 213 A.2d 769; Restatement, 4 Torts § 757 [b]) or through general publication, as

---

[3] "Some of the factors to be considered in determining whether given information is a trade secret are: (1) the extent to which the information is known outside the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the employer to guard the secrecy of the information; (4) the value of the information to the employer and to his competitors; (5) the amount of effort or money expended by the employer in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. Restatement, 4 Torts § 757, comment b." *Town & Country House & Homes Service, Inc.* v. *Evans,* 150 Conn. 314, 319, 189 A.2d 390.

It is a well-established principle that ideas in general circulation are in the public domain, available for all to use freely unless protected by a valid patent. *Sears, Roebuck & Co.* v. *Stiffel Co.,* 376 U.S. 225, 84 S. Ct. 784, 11 L. Ed. 2d 661; *Compco Corporation* v. *Day-Brite Lighting, Inc.,* 376 U.S. 234, 84 S. Ct. 779, 11 L. Ed. 2d 669; *Kellogg Co.* v. *National Biscuit Co.,* 305 U.S. 111, 118, 120, 59 S. Ct. 109, 83 L. Ed. 73; *Singer Mfg. Co.* v. *June Mfg. Co.,* 163 U.S. 169, 185, 16 S. Ct. 1002, 41 L. Ed. 118; *American Dirigold Corporation* v. *Dirigold Metals Corporation,* 125 F.2d 446, 452 (6th Cir.); Cummings, "Some Aspects of Trade Secrets and Their Protection," 54 Ky. L.J. 190, 192.

in a trade journal or a patent.[4] *Sandlin* v. *Johnson,* 141 F.2d 660, 661 (8th Cir.) ; *Bimba Mfg. Co.* v. *Starz Cylinder Co.,* supra; *Tabor* v. *Hoffman,* 118 N.Y. 30, 23 N.E. 12; Kane, "Limitations on the Law of Trade Secrets," 53 J. Pat. Off. Soc'y 162; Milgram, "Sears to Lear to Painton," 46 N.Y.U.L. Rev. 17.

Although the defendant does not assert that the court applied an incorrect test in its determination of whether the plaintiff's process was so disclosed, he does claim that a state court may not determine what is disclosed in the prior art when that prior art happens to be revealed in a patent. We find no authority for this position.

Trade secret law, a part of that branch of law known as unfair competition, is governed by the state substantive law. *Pecheur Lozenge Co.* v. *National Candy Co.,* 315 U.S. 666, 62 S. Ct. 853, 86 L. Ed. 1103; *Englehard Industries, Inc.* v. *Research Instrumental Corporation,* 324 F.2d 347, 353 (9th Cir.), cert. denied, 377 U.S. 923, 84 S. Ct. 1220, 12 L. Ed. 2d 215; *Ferroline* v. *General Aniline & Film Corporation,* 207 F.2d 912, 920 (7th Cir.) ; *Smith* v. *Dravo Corporation,* 203 F.2d 369, 373 (7th Cir.) ;

---

[4] There is no difference between publication of a secret in a patent or by other means, for the patent publishes so much as it discloses. Turner, Law of Trade Secrets, p. 438. The issuance of a patent is no more and no less cogent as a publication of secrets than any other equally effective method of publication. It is of course the publication of that patent when it issues that is considered the abandonment of the secrecy. *A. O. Smith Corporation* v. *Petroleum Iron Works,* 23 F.2d 531, 536 (6th Cir.) ; 37 C.F.R. §§ 1.11, 1.13. The mere filing of an application for a patent is not publication of the trade secret contained in that application (1 Nims, Unfair Competition and Trade-Marks § 146), for the patent office keeps pending applications secret. 35 U.S.C. § 122; 37 C.F.R. § 1.14 (a). Abandoned and rejected patent applications are also kept secret. 37 C.F.R. §§ 1.14 (b), 1.108; see also note, 51 Va. L. Rev. 917, 918; Ellis, Trade Secrets § 145.

Cummings, "Some Aspects of Trade Secrets and Their Protection," 54 Ky. L.J. 190, 205; 60 Am. Jur. 2d, Patents, § 241, and cases cited. A suit for wrongful disregard of a confidential relationship is a matter independent of the patent laws.[5] *Becher* v. *Contoure Labs,* 279 U.S. 388, 391, 49 S. Ct. 356, 73 L. Ed. 752. A primary issue to be determined in all such actions is whether there is a trade secret existing which is to be protected. Such a determination necessarily requires the factual determination of whether the alleged secret has previously been the subject of a general publication and thus not a secret, and this, in turn, requires that the trial court evaluate all evidence presented of published prior art, including that which is revealed in patents. "The Federal courts have exclusive jurisdiction of all cases arising under the patent laws, but not of all questions in which a patent may be the subject-matter of the controversy." *New Marshall Engine Co.* v. *Marshall Engine Co.,* 223 U.S. 473, 478, 32 S. Ct. 238, 56 L. Ed. 513; see also *Lear, Inc.* v. *Adkins,* 395 U.S. 653, 89 S. Ct. 1902, 23 L. Ed. 2d 610; *American Well Works* v. *Layne & Bowler Co.,* 241 U.S. 257, 259, 36 S. Ct. 585, 60 L. Ed. 987; *Pratt* v. *Paris Gaslight & Coke Co.,* 168 U.S. 255, 259, 18 S. Ct. 62, 42 L. Ed. 458; *Transparent Ruler Co.* v. *C-Thru Ruler Co.,* 129 Conn. 369, 373, 28 A.2d 232; Chisum, "The Allocation of Jurisdiction Between State and Federal Courts in Patent Litigation," 46 Wash. L. Rev. 633; note, 72 Harv. L. Rev. 328; note, 70 Harv. L. Rev. 509; 2 Nims, Unfair Competition and Trade-Marks § 363.

The defendant argues that the court erred in that its determination of the prior art as disclosed in

---

[5] See 35 U.S.C. §§ 1–293.

existing patents was "against the weight of the
evidence." We do not correct the finding on such a
ground. Practice Book § 625; *Barnini* v. *Sun Oil Co.,*
161 Conn. 59, 63–64, 283 A.2d 217; *Johnston Jewels,
Ltd.* v. *Leonard,* 156 Conn. 75, 79, 239 A.2d 500. We
cannot conclude on the subordinate facts in the find-
ing that the court erred in concluding that the plain-
tiff's trade secret was unknown in the prior art. The
court's conclusion that there was a secret is sup-
ported by the subordinate facts in the finding. See
*Town & Country House & Homes Service, Inc.* v.
*Evans,* 150 Conn. 314, 321, 189 A.2d 390.

The defendant next argues that whatever secrecy
remained was destroyed when the plaintiff attached
to the pleading an exhibit which revealed the plain-
tiff's process, and which remained in the clerk's file
for a limited period of time. Although the better
practice would have been for the plaintiff to have
omitted exhibit A from the pleadings, absolute
secrecy is not essential and the plaintiff does not
abandon his secret "by delivering it or a copy to
another for a restrictive purpose, nor by a limited
publication." *Pressed Steel Car Co.* v. *Standard
Steel Car Co.,* 210 Pa. 464, 472, 60 A. 4; *Space Aero
Products Co.* v. *R. E. Darling Co.,* 238 Md. 93, 208
A.2d 74, cert. denied, 382 U.S. 843, 86 S. Ct. 77, 15
L. Ed. 2d 83; Callmann, Unfair Competition and
Trade-Marks § 53.3 (e); Ellis, Trade Secrets §§ 22,
26, 53; comment, 1971 Wis. L. Rev. 900, 908. Such
a disclosure does not place the idea in "general
circulation" so as to relieve the defendant of
liability for its disclosure. *Lear, Inc.* v. *Adkins,*
supra, 668; *Sears, Roebuck & Co.* v. *Stiffel Co.,*
supra; *Smith* v. *Dravo Corporation,* 203 F.2d 369
(7th Cir.); *Space Aero Products Co.* v. *R. E. Darling
Co.,* supra; Doerfer, "The Limits of Trade Secret

Law Imposed by Federal Patent and Antitrust Supremacy," 80 Harv. L. Rev. 1432, 1435; 1 Nims, op. cit. § 146. Although the sheriff and clerk may have viewed the exhibit, inspection by a public official does not contradict the element of secrecy. *Peabody* v. *Norfolk*, 98 Mass. 452, 461. The defendant offered no evidence to show that through the plaintiff's action a competitor or member of the general public had discovered the secret of its process. *Allen Mfg. Co.* v. *Loika*, 145 Conn. 509, 516, 144 A.2d 306; Turner, The Law of Trade Secrets, 30; Ellis, Trade Secrets § 22. We cannot conclude that the court erred in concluding that the bringing of this suit, with exhibit A attached, has not impaired the secret character of the process.

The defendant, in his final assignment of error, claims that the court erred in overruling his claim that the court was without subject matter jurisdiction, since state laws conflicting with federal patent policy are forced to give way under the principle of federal supremacy.

The defendant's position is that the recent decisions of the United States Supreme Court in *Sears, Roebuck & Co.* v. *Stiffel*, 376 U.S. 225, 84 S. Ct. 784, 11 L. Ed. 2d 661; *Compco Corporation* v. *Day-Brite Lighting, Inc.*, 376 U.S. 234, 84 S. Ct. 779, 11 L. Ed. 2d 669; and *Lear, Inc.* v. *Adkins*, 395 U.S. 653, 89 S. Ct. 1902, 23 L. Ed. 2d 610, dictate that a state court is without subject matter jurisdiction to enjoin the tortious appropriation of a trade secret where the parties have applied for a patent thereon. We cannot agree.

In both the *Sears* and *Compco* cases, the trial court had granted to the plaintiff damages and an injunction under Illinois unfair competition law restraining the defendants from marketing certain products

that were identical in appearance to products which were sold on the open market by the plaintiffs and that had been held to be the subjects of invalid design patents. The United States Supreme Court, speaking through Mr. Justice Black, reversed in both cases, holding that federal patent law conflicted with and pre-empted state law denying competitors the right to copy items disclosed to the public through patents which, having been held invalid, no longer protected their disclosures. Such items, like articles on which the patent has expired, are in the public domain and may be made and sold by whoever chooses to do so. *Kellogg Co.* v. *National Biscuit Co.,* supra; *Singer Mfg. Co.* v. *June Mfg. Co.,* supra. When the patent expires, the monopoly created by it expires also and the right to make, use and sell the article passes to the public, since an aim of the patent laws is that the public should then be free to use that which the inventor chose to disclose to them in return for the grant of a monopoly for a limited time. See *Scott Paper Co.* v. *Marcalus Mfg. Co.,* 326 U.S. 249, 255–56, 66 S. Ct. 101, 90 L. Ed. 47; *Kellogg Co.* v. *National Biscuit Co.,* supra; *Singer Mfg. Co.* v. *June Mfg. Co.,* supra. The holding of *Sears* and *Compco* was reiterated in *Lear, Inc.* v. *Adkins,* supra, 668, wherein the court declared that "federal law requires that all ideas *in general circulation* [emphasis added] be dedicated to the common good unless they are protected by a valid patent. *Sears, Roebuck & Co.* v. *Stiffel Co.,* supra; *Compco Corporation* v. *Day-Brite Lighting, Inc.,* supra," observing that there is an "important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain." *Lear* case at 670. Consistent with these holdings, the court in the *Lear* case refused to

order contractual royalty payments for an invention claimed in a patent from the time that the patent issued if the patent is later held to be invalid. "[E]nforcing this contractual provision would undermine the strong federal policy favoring the full and free use of ideas in the public domain." The *Lear* case, 674. The court then reserved for possible future decision the question of whether the states have the power to enforce contracts under which someone claiming to have a new discovery can obtain payment for disclosing it while his patent application is pending, even though the discovery is later held to be unpatentable.[6] Mr. Justice Black, joined by Chief Justice Warren and Mr. Justice Douglas, wishing to go still further and preempt enforcement of such contracts, dissented, observing that *"One who makes a discovery may, of course, keep it secret if he wishes* [emphasis added], but private arrangements under which self-styled 'inventors' do not keep their discoveries secret, but rather disclose them, in return for contractual payments, run contrary to the plan of our patent laws, which tightly regulate the kind of inventions that may be protected and the manner in which they may be protected and the manner in which they may be patented. The national policy expressed in the patent laws, favoring free competition and narrowly

---

[6] "[T]he question [of] whether, and to what extent, the States may protect the owners of *unpatented* inventions who are willing to disclose their ideas to manufacturers only upon payment of royalties," was not reached by the California Supreme Court. The United States Supreme Court observed that "[o]ur decision today will, of course, require the State courts to reconsider the theoretical basis of their decision enforcing the contractual rights of inventors and it is impossible to predict the extent to which this re-evaluation may revolutionize the law of any particular State in this regard." *Lear, Inc.* v. *Adkins*, 395 U.S. 653, 674–75, 89 S. Ct. 1902, 23 L. Ed. 2d 610.

limiting monopoly, cannot be frustrated by private agreements among individuals with or without the approval of the State." *Lear,* at page 677. See *Painton & Co.* v. *Bourns, Inc.,* 442 F.2d 216, 225 (2d Cir.).

It is apparent then that the United States Supreme Court, while calling into question the extent to which a state may enforce trade secrets contracts entered into by inventors who wish to disclose their secret for profit,—a question not before us—continues to recognize the right of any inventor, such as the plaintiff herein, to choose voluntarily to keep secret his discovery if he wishes.[7] *United States* v. *Dubilier Condenser Corporation,* 289 U.S. 178, 186, 53 S. Ct. 554, 77 L. Ed. 1114; *Becker* v. *Contoure Labs,* 279 U.S. 388, 49 S. Ct. 356, 73 L. Ed. 752; *DuPont de Nemours Powder Co.* v. *Masland,* 244 U.S. 100, 37 S. Ct. 575, 61 L. Ed. 1016; *Dr. Miles Medical Center Co.* v. *Park & Sons Co.,* 220 U.S. 373, 402, 31 S. Ct. 376, 55 L. Ed. 502; *Continental Paper Bag Co.* v. *Eastern Paper Bag Co.,* 210 U.S. 405, 424, 28 S. Ct. 748, 52 L. Ed. 1122; *Board of Trade* v. *Christie Grain & Stock Co.,* 198 U.S. 236, 25 S. Ct. 637, 49 L. Ed. 1031; *United States* v. *Bell Telephone Co.,* 167 U.S. 224, 250, 17 S. Ct. 809, 42 L. Ed. 144; see also *Imperial Chemical Industries Ltd.* v. *National Distillers & Chemical Corporation,* 342 F.2d 737 (2d Cir.), modified, 354 F.2d 459; *Formulabs, Inc.* v. *Hartley Pen Co.,* 275 F.2d 52 (9th Cir.), cert. denied, 363 U.S. 830, 80 S. Ct. 1600, 4 L. Ed. 2d 1524; *Foundry Services, Inc.* v. *Beneflux Corporation,* 206

---

[7] The right of an inventor to maintain his trade secret has also been repeatedly recognized by Congress. See Klein, "The Technical Trade Secret Quadrangle," 55 Nw. U.L. Rev. 437, 459; Sutton, "Protecting Government Contractor's Unpatented Proprietary Information," 8 Idea 239; note, 62 Nw. U.L. Rev. 956, 965; comment, 1971 Wis. L. Rev. 900, 904.

F.2d 214 (2d Cir.); *Nelson* v. *Commissioner,* 203 F.2d (6th Cir.); *Reynolds* v. *Whitin Machine Works,* 167 F.2d 78, 86 (4th Cir.); *Hoeltke* v. *Kemp Mfg. Co.,* 80 F.2d 912, 922–23 (4th Cir.).

It is clear that the plaintiff's cause of action is for a wrongful breach of a confidential relationship, a matter independent of the patent laws. "[T]he subject matter of [the plaintiff's] claim was an undisclosed invention which does not need a patent to protect it from disclosure by breach of trust. *Irving Works* v. *Kerlow Street Flooring Co.,* 96 N.J. Eq. 702; *Dupont de Nemours Powder Co.* v. *Masland,* 244 U.S. 100 [37 S. Ct. 575, 61 L. Ed. 1016]." *Becker* v. *Contoure Labs,* supra, 391. The fact that a patent application has been filed by the defendant does not remove from the state court jurisdiction to enjoin a breach of a confidential relationship, for "[plaintiff's] right was independent of and prior to any arising out of the patent law, and it seems a strange suggestion that the assertion of that right can be removed from the cognizance of the tribunals established to protect it by its opponent going into the patent office for a later title." *Becker* v. *Contoure Labs,* supra; *Smith & Egge Mfg. Co.* v. *Webster,* 87 Conn. 74, 84, 86 A. 763.

We see no conflict with patent policy of encouraging invention and disclosure thereof underlying the present suit to enjoin the tortious appropriation of the plaintiff's trade secret. For an inventor, such as the plaintiff, who chooses to seek the protection of the patent laws, only trade secret law is available during the period in which his application is pending to offer him protection against those who deal wrongfully with him. The plaintiff in its brief readily concedes that, as against persons who innocently or independently discover its secret, it has

no recourse during this period, which may extend over a protracted period of time. See *Lear, Inc.* v. *Adkins,* supra, 658–59; *Speedry Chemical Products, Inc.* v. *Carter's Ink Co.,* supra, 330; Handler, "Unfair Competition," 21 Iowa L. Rev. 175, 192; Mahon, "Trade Secrets and Patents Compared," 50 J. Pat. Off. Soc'y 536 (1968); Milgram, "Sears to Lear to Painton," 46 N.Y.U. L. Rev. 17, 18 n.5; 1 Nims, Unfair Competition and Trade-Marks § 148. If discoveries could be stolen without recourse to the inventor during the period involved herein, the economic impetus for research and development would be greatly diminished. Marcuse, "The Protection of Trade Secrets," 36 Conn. B.J. 348; note, 45 N.Y.U. L. Rev. 386, 393; comment, 14 U.C.L.A. L. Rev. 911, 914; note, 62 Nw. U.L. Rev. 956, 963.

The patent laws themselves recognize the need for secrecy during this period and all applications are held in confidence, until the patent issues. 35 U.S.C. § 122. Thus it is only when the application is allowed that an inventor must decide whether to pay the final fee for issuance of the patent or refuse to make the payment whereupon the application is abandoned but maintained in secrecy. Note, 62 Nw. U.L. Rev. 956, 965, 37 C.F.R. §§ 1.311–1.317, 1.14 (b). This recognition by the patent office of the inventor's right to continued secrecy during the period of the patent application serves not only to preserve the inventor's "natural right in his discoveries" *(Graham* v. *John Deere Co.,* 383 U.S. 1, 9, 86 S. Ct. 684, 15 L. Ed. 2d 545), but also to encourage the inventor to choose to apply for patent protection. Clearly, if the filing of the application destroyed the secrecy of the invention before the inventor knew the extent of the monopoly he would receive, it would discourage the filing of applications, which lead ulti-

mately to disclosure of the discovery. Ellis, Trade Secrets § 145; *A. O. Smith* v. *Petroleum Iron Works Co.*, supra.

We conclude then that the enforcement by the state of the inventor's recognized right to secrecy during the period of patent application presents no conflicts with the two principal objectives of the patent law—encouragement of invention and disclosure of ideas—but is in fact in harmony with them. See Note, 45 N.Y.U. L. Rev. 386, 393; note, 62 Nw. U.L. Rev. 956, 960. We hold then that the mere filing of patent applications containing a trade secret does not preempt the protection by state trade secret law afforded to a holder of a trade secret against unauthorized use or disclosure of his secret by one who has breached a confidential relationship. Since an application to patent a discovery is not of itself a general disclosure of the discoverer's secret and hence not a release of the obligation of the confidential disclosure, protection may be afforded during the period that the patent application is pending and it presents no conflict with the purposes or objectives of the federal patent law.

There is no error.

In this opinion the other judges concurred.