******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# SHERI SPEER *v.* DONNA SKAATS ET AL.
## (AC 47921)

Alvord, Moll and Seeley, Js.

*Syllabus*

The plaintiff appealed from the trial court's judgment granting the defendants' motions to dismiss her complaint, in which she sought, inter alia, an injunction requiring the defendants to return to her certain of her confidential records and documents they allegedly had misappropriated in violation of the Connecticut Uniform Trade Secrets Act (CUTSA) (§ 35-50 et seq.). The plaintiff claimed that the court erred in determining that her alleged failure to comply with the three year statute of limitations (§ 35-56) in CUTSA could properly be raised in a motion to dismiss. *Held*:

The trial court did not abuse its discretion in denying the plaintiff's motion to disqualify the defendants' counsel, L, as the plaintiff failed to demonstrate a common factual issue and a substantial relationship between the present action and L's representation of the plaintiff in an action seventeen years earlier.

The trial court improperly rendered judgment for the defendants, as they improperly raised § 35-36 in their motions to dismiss when they were instead required to plead it as a special defense under the applicable rule of practice (§ 10-50).

Because the right of action raised in the plaintiff's complaint existed at common law, independent of CUTSA, § 35-56 was not jurisdictional in nature, and there was no indication in the legislative history and case law predating the 1983 enactment of CUTSA that the legislature intended to deprive trial courts of subject matter jurisdiction over untimely trade secret actions; accordingly, the judgment was reversed and the case was remanded for further proceedings.

Argued December 9, 2025—officially released April 28, 2026

*Procedural History*

Action seeking, inter alia, an injunction requiring the defendants to return to the plaintiff certain of her confidential records the defendants allegedly had misappropriated, and for other relief, brought to the Superior Court in the judicial district of New London, where the court, *Graff, J.*, denied the plaintiff's motion to disqualify the defendants' counsel; thereafter, the court granted the defendants' motions to dismiss and rendered judgment

thereon, from which the plaintiff appealed to this court. *Reversed in part*; *judgment directed*; *further proceedings*.

*Sheri Speer*, self-represented, the appellant (plaintiff).

*Lloyd L. Langhammer*, for the appellees (defendants).

ALVORD, J. The self-represented plaintiff, Sheri Speer, appeals from the judgment of the trial court dismissing her action alleging that the defendants, Donna Skaats and Lloyd Langhammer, violated the Connecticut Uniform Trade Secrets Act (CUTSA), General Statutes § 35-50 et seq. On appeal, the plaintiff claims that the court improperly **(1)** denied her motion to disqualify the defendants' counsel and **(2)** granted the defendants' motions to dismiss the action on the ground that the statute of limitations set forth in General Statutes § 35-56 had expired.[1] We agree with the plaintiff's second claim and, accordingly, reverse in part the judgment of the trial court.[2]

The following procedural history is relevant to our resolution of this appeal. The plaintiff commenced the present action on October 10, 2023, by way of a two count complaint. In count one, the plaintiff alleged that Skaats, an attorney who had received "records and other financial documents as to the plaintiff's affairs" via a subpoena duces tecum served in a prior action, had misappropriated, shared, and unlawfully disseminated the plaintiff's records. The plaintiff alleged that Skaats had copied and transferred the records into the possession of Langhammer, who was Skaats' attorney. The plaintiff alleged that she had made a demand for the return of the records. In count two, the plaintiff sought injunctive relief, seeking the return of the records and alleging that she was "continuing to be the subject of fines, penalties, interest and even lost business opportunities as a consequence of

---

[1] For ease of discussion, we address the plaintiff's claims in a different order than that in which they are presented in her principal appellate brief.

[2] The plaintiff raises two additional claims on appeal that we need not address in light of our conclusion that the trial court improperly granted the defendants' motions to dismiss.

the defendants' refusal to disgorge the records necessary to file and amend the plaintiff's tax returns."

On January 8, 2024, the plaintiff filed a motion for disqualification of counsel. Therein, she alleged that Langhammer had represented her in a prior action involving a commercial real estate transaction, citing *Bluefin Mortgage Fund, LLC* v. *Speer*, Docket No. CV-06-5005568-S, 2007 WL 1415922 (Conn. Super. April 30, 2007) (Bluefin Mortgage Fund, LLC matter). The plaintiff alleged that the present action seeks the return of her documents, which she alleged "were stolen during the course of a fraudulent involuntary bankruptcy [by] the defendants, [in] concert with their other client, Seaport Capital Partners, LLC, and have not been returned." The plaintiff alleged, inter alia, that Langhammer had "unprecedented access to confidential information concerning trade secrets, business practices, financing strategies and other information . . . ." On January 19, 2024, the defendants filed an objection to the plaintiff's motion to disqualify. They argued that the plaintiff "references a case that is eighteen years old . . . without analysis or explanation as to why an eighteen year old case would require disqualification in the instant action." Moreover, the defendants argued that "[t]he plaintiff references matters that have been litigated ad nauseum in other cases, i.e., the alleged fraudulent involuntary bankruptcy, etc. All of these matters have soundly been rejected by the Bankruptcy Court and the Superior Court. Again, she provides no legal analysis for her claims regarding how a ten year old involuntary bankruptcy where she was denied a discharge impacts this instant case."

On February 14, 2024, the court, *Graff, J.*, denied the plaintiff's motion for disqualification. The court explained: "[T]he plaintiff argues that she did not consent to permit [Langhammer] to represent [Skaats] in this action when he previously represented the plaintiff in a prior action. In support of her argument, the plaintiff attaches an appearance by [Langhammer], dated

July 5, 2007, and a letter dated October 25, 2007. These documents establish that [Langhammer] represented the plaintiff in 2007 when she was a defendant in the Bluefin Mortgage Fund, LLC matter. No other facts were introduced to the court by the plaintiff regarding [Langhammer's] representation of her in that matter. Comparatively, as the defendant points out, [Langhammer's] representation of the plaintiff in the Bluefin Mortgage Fund, LLC matter is from seventeen years ago. There is no evidence that there was an ongoing attorney-client relationship from 2007 to the present between the plaintiff and [Langhammer]." The court found that the representation did not violate rule 1.9 of the Rules of Professional Conduct because "there is no relationship either factual or legal between the Bluefin Mortgage Fund, LLC matter and the present matter. The plaintiff has failed to carry her burden and demonstrate that there is a common factual issue between the Bluefin Mortgage Fund, LLC matter and the disputes at issue here."

Prior to the trial court's decision on the motion for disqualification, the defendants each filed a motion to dismiss the complaint on February 9, 2024, a joint memorandum of law in support of the motions to dismiss, and several exhibits. In their memorandum of law, the defendants maintained that the action should be dismissed for a number of reasons, including that it was not brought within the three year statute of limitations applicable to actions alleging violations of CUTSA. The defendants attached as an exhibit a copy of a 2016 subpoena issued by Skaats to the plaintiff's accountant. The defendants maintained that, in July, 2020, the plaintiff had commenced a prior action in which she alleged that the defendants had not returned her documents. The defendants also attached as an exhibit a copy of the complaint in that prior action.[3] Thus, the defendants alleged that the

[3] The plaintiff's complaint in the prior action, filed on July 7, 2020, contained allegations of preferential treatment of certain entities to obtain sensitive information, specifically, "tax, financial and medical records of the plaintiff, including original, irreplaceable records that were subpoenaed by the defendant Skaats from her accountant and never

present action, commenced in October, 2023, was barred by the statute of limitations.

On February 20, 2024, the plaintiff filed a memorandum of law in opposition to the motions to dismiss. Therein, she responded to the defendants' statute of limitations argument in one paragraph, maintaining: "[A]lthough it is not the proper subject of a motion to dismiss, the defendants claim the applicable statute of limitations has run—even though this action involves an ongoing course of conduct. Subject matter jurisdiction is the power of the court to hear a controversy. The court must hear the case in order to determine the issue of whether or not any statute of limitations has run. Notwithstanding that issue and most certainly taking into mind that all favorable inferences toward subject matter jurisdiction must be inferred, the issue of ongoing and threatened misappropriation of trade secrets continues along with the withholding of . . . the plaintiff's original records to her exclusion."

On July 1, 2024, the trial court issued an order granting the defendants' motions to dismiss. The court considered the subpoena and the July, 2020 complaint and concluded that "the plaintiff knew since at least July 7, 2020, that the defendants allegedly misappropriated her records. Three years from July 7, 2020, was July 7, 2023. The statute of limitations ran out on the plaintiff's claims on July 7, 2023. This action was served on the defendants on October 10, 2023, and filed on October 20, 2023. The claims are outside of the statute of limitations and are time barred." Accordingly, the court concluded that it lacked subject matter jurisdiction over the action and granted the motions to dismiss.

The plaintiff thereafter filed a motion for reconsideration of the trial court's decision denying her motion for disqualification, which was denied. The plaintiff also

returned. This also included medical records obtained by Norwich Public Utilities under false pretense, which were ordered by the defendant Langhammer to be turned over to [Steven] Tavares' counsel, Patrick Boatman, representing his shell entities/alter egos."

filed a motion for reconsideration of the court's decision granting the defendants' motions to dismiss. Therein, she argued, inter alia, that the statute of limitations must be pleaded as a special defense and is not a proper basis for a motion to dismiss, and that the action was saved by the accidental failure of suit statute. See General Statutes § 52-592. On July 24, 2024, the court issued an order denying the motion for reconsideration of the dismissal, in which it stated: "The plaintiff argues that reconsideration is warranted because the court failed to address the plaintiff's claim that the present action is saved by the accidental failure of suit statute. The plaintiff did not argue in her objection to the motions to dismiss that the accidental failure of suit statute tolled the statute of limitations for her claims or that the statute of limitations had not run on legal claims because of the accidental failure of suit statute. The plaintiff's argument in the motion for reconsideration is nothing more than a second bite at the apple and an attempt to avoid dismissal of this action. Furthermore, it is questionable whether the plaintiff has sufficiently alleged that she is bringing the present action under the accidental failure of suit statute."[4] The court's ruling did not address the plaintiff's argument regarding the statute of limitations. This appeal followed.[5]

I

We first address the plaintiff's claim that the trial court improperly denied her motion for disqualification of counsel. We are not persuaded.

We begin by setting forth the standard of review governing our resolution of this claim. "The standard of review for determining whether the court properly denied

---

[4] The trial court then rejected the plaintiff's contention that her prior action had accidentally failed. Specifically, the court noted that the plaintiff voluntarily had withdrawn the prior action and, thus, was not entitled to take advantage of the extension of time provided by the accidental failure of suit statute.

[5] The plaintiff sought articulation of the trial court's decisions granting the defendants' motions to dismiss and denying the plaintiff's motion for reconsideration, both of which were denied.

a motion to disqualify counsel is an abuse of discretion standard. The Superior Court has inherent and statutory authority to regulate the conduct of attorneys who are officers of the court. . . . In its execution of this duty, the Superior Court has broad discretionary power to determine whether an attorney should be disqualified for an alleged breach of confidentiality or conflict of interest. . . . In determining whether the Superior Court has abused its discretion in denying a motion to disqualify, this court must accord every reasonable presumption in favor of its decision. Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . .

"Disqualification of counsel is a remedy that serves to enforce the lawyer's duty of absolute fidelity and to guard against the danger of inadvertent use of confidential information. . . . In disqualification matters, however, we must be solicitous of a client's right freely to choose his counsel . . . mindful of the fact that a client whose attorney is disqualified may suffer the loss of time and money in finding new counsel and may lose the benefit of its longtime counsel's specialized knowledge of its operations. . . .

"The competing interests at stake in the motion to disqualify, therefore, are: (1) the [plaintiff's] interest in protecting confidential information; (2) the [defendant's] interest in freely selecting counsel of [its] choice; and (3) the public's interests in the scrupulous administration of justice. . . . Rule 1.9 (a) [of the Rules of Professional Conduct] expresses the same standard that we had applied under the Code of Professional Responsibility when a claim of disqualification based on prior representation arose. Thus, an attorney should be disqualified if he has accepted employment adverse to the interests of a former client on a matter substantially related to the prior representation. . . . This test has been honed in its practical application to grant disqualification only upon a showing that the relationship between the issues in the prior and present cases is patently clear or when the

issues are identical or essentially the same. . . . Once a substantial relationship between the prior and present representation is demonstrated, the receipt of confidential information that would potentially disadvantage a former client is presumed." (Citation omitted; internal quotation marks omitted.) *In re Gabriel C.*, 196 Conn. App. 333, 348–50, 229 A.3d 1073, cert. denied, 335 Conn. 938, 248 A.3d 708 (2020).

We conclude that the trial court acted well within its discretion in denying the plaintiff's motion to disqualify. The court considered the plaintiff's documentation that Langhammer represented the plaintiff in 2007, which was seventeen years before the present action. The court noted that the plaintiff had provided no other facts regarding Langhammer's representation in 2007. Thus, the court concluded that the plaintiff had failed to demonstrate a common factual issue between the prior representation and the present action. We agree with the trial court that the plaintiff failed to meet her burden of demonstrating that the two proceedings are substantially related. See id., 351 (respondent failed to meet burden of demonstrating substantial relationship because she provided no record, aside from conclusory statements, to support claim that matters were substantially related). On the basis of the court's findings and the record before us, we conclude that the court did not abuse its discretion in denying the plaintiff's motion to disqualify.

II

We next address the plaintiff's claim that the trial court improperly granted the defendants' motions to dismiss her complaint. She argues that the court erred in determining that the failure to comply with the three year statute of limitations set forth in CUTSA, § 35-56, properly could be raised in a motion to dismiss. The plaintiff contends that the statute of limitations was required to be pleaded as a special defense. The defendants wholly fail to respond to this argument in their appellate brief, nor did they provide any authority or analysis to support a conclusion that the legislature intended § 35-56 to

create a jurisdictional bar. For the reasons that follow, we agree with the plaintiff that the court improperly granted the defendants' motions to dismiss.

We begin by setting forth the standard of review and relevant legal principles. "The standard of review for a court's decision on a motion to dismiss [under Practice Book § 10-31 (a) (1)] is well settled. A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Internal quotation marks omitted.) *MacDermid, Inc.* v. *Leonetti*, 310 Conn. 616, 626, 79 A.3d 60 (2013). In undertaking review of the granting of a motion to dismiss on the ground of a lack of subject matter jurisdiction, we are mindful that "[s]ubject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action." (Internal quotation marks omitted.) *Office of Chief Disciplinary Counsel* v. *Vena*, 236 Conn. App. 39, 53, 347 A.3d 945 (2025). "[I]n determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction

should be indulged." (Internal quotation marks omitted.) *MacDermid, Inc.* v. *Leonetti*, supra, **626.**

"Generally, **[a]** claim that an action is barred by the lapse of the statute of limitations must be pleaded as a special defense . . . ." (Internal quotation marks omitted.) *Ahrens* v. *Hartford Florists' Supply, Inc.*, 198 Conn. App. 24, 35, 232 A.3d 1129 (2020). Practice Book § 10-50 provides in relevant part: "No facts may be proved under either a general or special denial except such as show that the plaintiff's statements of fact are untrue. Facts which are consistent with such statements but show, notwithstanding, that the plaintiff has no cause of action, must be specially alleged. Thus . . . the statute of limitations . . . must be specially pleaded . . . ." "When a statute of limitations is not jurisdictional in nature, it may be waived when not specially pleaded." *Freidheim* v. *McLaughlin*, 217 Conn. App. 767, 796 n.6, 290 A.3d 801 (2023); see also *Martino* v. *Scalzo*, 113 Conn. App. 240, 249, 966 A.2d 339, cert. denied, 293 Conn. 904, 976 A.2d 705 (2009).

"There is an exception to this general rule, however, as noted by our Supreme Court, when a statute gives a right of action which did not exist at common law, and fixes the time within which the right must be enforced, the time fixed is a limitation or condition attached to the right—it is a limitation of the liability itself as created, and not of the remedy alone." (Internal quotation marks omitted.) *Ahrens* v. *Hartford Florists' Supply, Inc.*, supra, 198 Conn. App. 35; see also *Greco* v. *United Technologies Corp.*, 277 Conn. 337, 349–50, 890 A.2d 1269 (2006). "The courts of Connecticut have repeatedly held that, under such circumstances, the time limitation is a substantive and jurisdictional prerequisite . . . ." (Internal quotation marks omitted.) *Neighborhood Assn., Inc.* v. *Limberger*, 321 Conn. 29, 47, 136 A.3d 581 (2016); see also *Pereira* v. *State Board of Education*, 304 Conn. 1, 48, 37 A.3d 625 (2012) ("[u]nder such circumstances, the time limitation is a substantive and jurisdictional prerequisite, which may be raised . . . at

any time, even by the court sua sponte" (internal quotation marks omitted)**).**

"[A]lthough . . . mandatory language may be an indication that the legislature intended a time requirement to be jurisdictional, such language alone does not overcome the strong presumption of jurisdiction, nor does such language alone prove strong legislative intent to create a jurisdictional bar. . . . [A] conclusion that a time limit is subject matter jurisdictional has very serious and final consequences. It means that, except in very rare circumstances . . . a subject matter jurisdictional defect may not be waived . . . may be raised at any time, even on appeal . . . and that subject matter jurisdiction, if lacking, may not be conferred by the parties, explicitly or implicitly." (Internal quotation marks omitted.) *Lostritto* v. *Community Action Agency of New Haven, Inc.*, 269 Conn. 10, 32, 848 A.2d 418 (2004). Therefore, "there is a presumption in favor of subject matter jurisdiction, and [our Supreme Court has required] a strong showing of legislative intent that such a time limit is jurisdictional." (Internal quotation marks omitted.) Id.

In the present case, the determination of whether the trial court properly granted the motions to dismiss turns on whether the statute of limitations contained within § 35-56 is jurisdictional in nature. That determination requires consideration of whether the statute gives a right of action that did not exist at common law. See id., 23. Courts conducting such an inquiry examine the legislative history of the relevant statute. See id. ("In order to determine whether the 120 day time limitation [for bringing an apportionment claim] is substantive or procedural, therefore, we must first ascertain whether [General Statutes] § 52-102b created a right that did not exist at common law. The facts essential to this query, which we answer in the affirmative, can be found in the legislative history of that statute.").

The plaintiff's complaint alleges a violation of CUTSA, the statutory framework governing misappropriation of trade secrets. CUTSA was enacted in 1983 and is

Connecticut's version of the Uniform Trade Secrets Act. To establish liability under CUTSA, the plaintiff must prove the existence of a trade secret, as defined by General Statutes § 35-51 (d); see *BTS, USA, Inc.* v. *Executive Perspectives, LLC*, 166 Conn. App. 474, 494, 142 A.3d 342, cert. denied, 323 Conn. 919, 150 A.3d 1149 (2016); and a "misappropriation," as defined by § 35-51 (b). See *Dur-A-Flex, Inc.* v. *Dy*, 349 Conn. 513, 534, 321 A.3d 295 (2024). General Statutes § 35-53 (a) "permits a plaintiff to seek, in addition to or in lieu of injunctive relief, damages for actual loss and unjust enrichment not considered in computing damages for actual loss. Moreover, a plaintiff may seek punitive damages for wilful and malicious misappropriation and reasonable attorney's fees." *Evans* v. *General Motors Corp.*, 277 Conn. 496, 509, 893 A.2d 371 (2006). Section 35-56 provides: "No action for misappropriation shall be brought but within three years from the date the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. For the purposes of this section, a continuing misappropriation constitutes a single claim." General Statutes § 35-58 provides that "[t]his chapter shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it."

The legislative history of CUTSA demonstrates that the legislation was intended to codify and clarify common-law trade secrets protections. Representative Richard D. Tulisano stated that "what this legislation does is it replaces our common law to some extent by establishing a statutory remedy for misappropriation of a trade secret. It clarifies and expands the legal protections of commercial parties and commercial secrets."[6] 26 H.R. Proc., Pt. 6, 1983 Sess., pp. 2082–83. Similarly, Senator Howard T. Owens, Jr., remarked that "the bill

[6]Representative Tulisano continued: "This is designed to combat industrial espionage and conflicting claims over valuable intellectual property. As we presently have it right now, we also have a different definition in the Freedom of Information Act and for purposes of that act the definition has not been changed. Remedies available to an injured

would establish a statutory definition of trade secret and would clarify the court procedures available to prevent wrongful acquisition, use or disclosure of a trade secret and to recover damages. It goes in and defines what trade secrets are, what type of information it does. It also sets forth what the penalties are in the event that there's acquisition of another's trade secret by theft, bribery, misrepresentation. It also goes into what damages are in the event that there's a violation of the statute and it, in fact, codifies all of the old common law definitions." 26 S. Proc., Pt. 8, 1983 Sess., p. 2645. Finally, Anita Loalbo, a staff attorney for the Connecticut Business and Industry Association, similarly remarked during a committee hearing that "[t]he uniform act makes statutory the principles found in common law trade secrets protection." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 1, 1983 Sess., p. 135.

The legislative recognition that trade secret actions were available at common law also is reflected in decisions of our appellate courts. In *Evans* v. *General Motors Corp.*, supra, 277 Conn. 496, which held that plaintiffs have a right to a jury trial on trade secret claims, the court considered the historical background of trade secret litigation, explaining that "all of the available evidence suggests that claims alleging the improper disclosure of a trade secret were recognized at common law and tried before juries in English courts when the Connecticut constitution was adopted in 1818. The earliest published opinion to consider the issue was *Newbery* v. *James*, 35 Eng. Rep. 1011 (Ch. 1817), in which the plaintiffs sought to continue an injunction restraining the defendants from disclosing a secret involving the manufacture of a certain medicine. . . . The court observed that it could not

party under this bill, or damages for actual loss [c]aused by misappropriation and unjust and gain by the misappropriation.

 "Mr. Speaker, I think this is important legislation for a modern, technological society. We are less and less a manufacturing state and less and less a manufacturing society and more and more one engaged in high technology and trade secrets become more and more important. I think it is important to institute this stand, and I hope everyone will support it." 26 H.R. Proc., supra, p. 2083.

decide whether the parties' agreement to maintain the secret had been violated unless the secret was disclosed to the court. . . . Disclosure of the secret, however, would defeat the purpose of the injunctive relief requested. . . . The court concluded that it could do nothing but put the parties in a way to try their legal rights by an action. . . . It therefore dissolved the injunction, ordered the defendants to keep an accounting of what they sold while the parties tried their rights and proceeded to expedite the matter by removing a procedural obstacle arising from the fact that the plaintiff was also one of the executors for the named defendant, who then was deceased. . . . There is no hint in *Newbery* that the court's directive for the parties to bring an action in a court of law was in any way unusual. We thus conclude, on the basis of *Newbery*, that, although plaintiffs in the early nineteenth century could seek injunctive relief in courts of equity to restrain defendants from misappropriating business secrets, English courts of law during that time also conducted jury trials on trade secret claims seeking damages." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *Evans* v. *General Motors Corp.*, supra, 510–11.

The court in *Evans* further considered the uniform act, stating that "the prefatory note to the Uniform Trade Secrets Act, upon which CUTSA is based, provides that the uniform act 'codifies the basic principles of common law trade secret protection . . . .' Unif. Trade Secrets Act, prefatory note (amended 1985), 14 U.L.A. 531 (2005). An examination of CUTSA and the Uniform Trade Secrets Act therefore supports our conclusion that trade secret protection was available under the common law and, as a result, the plaintiffs have a right to a jury trial on their trade secret claims seeking damages." *Evans* v. *General Motors Corp.*, supra, 277 Conn. 518; see also *News America Marketing In-Store, Inc.* v. *Marquis*, 86 Conn. App. 527, 540 n.2, 862 A.2d 837 (2004) (noting that "trade secrets act has been interpreted as a

codification of the common law"), aff'd, 276 Conn. 310, 885 A.2d 758 (2005).

Other decisions of our appellate courts, issued prior to the adoption of CUTSA in 1983, further illustrate that a civil action for misappropriation of trade secrets was recognized at common law. See *Plastic & Metal Fabricators, Inc.* v. *Roy*, 163 Conn. 257, 258–59, 303 A.2d 725 (1972) (affirming judgment enjoining and restraining defendant from using or disclosing trade secret); *Town & Country House & Homes Service, Inc.* v. *Evans*, 150 Conn. 314, 320–21, 189 A.2d 390 (1963) (holding that trial court's conclusion that plaintiff's customer list was not trade secret was not supported by subordinate facts, and explaining that, "[i]f the list of customers was a trade secret, the plaintiff would be entitled, in addition to any other proper relief, to an injunction restraining the defendant from performing services for customers on the list"); *Allen Mfg. Co.* v. *Loika*, 145 Conn. 509, 517, 144 A.2d 306 (1958) (affirming judgment enjoining defendants from disclosing trade secret); see also *Holiday Food Co.* v. *Munroe*, 37 Conn. Supp. 546, 553–54, 426 A.2d 814 (1981) (affirming trial court's decision that certain customer lists did not constitute trade secrets).

Our appellate courts have not had occasion to construe § 35-56 to determine whether the legislature intended the statute of limitations to be jurisdictional.[7] Our review of the legislative history and case law predating the enactment reveals no indication that the legislature intended to deprive the court of subject matter jurisdiction to

---

[7] The trial court in the present case cited *Nash* v. *Roland Dumont Agency, Inc.*, Docket No. CV-18-5018054-S, 2019 WL 4344339 (Conn. Super. August 21, 2019), aff'd, 201 Conn. App. 906, 242 A.3d 776 (2020). In that case, the trial court rendered summary judgment in favor of the defendants on their claim that the statute of limitations had lapsed on the plaintiff's CUTSA claims. See id., *5. A review of the record in that case reveals that the defendants had pleaded as a special defense that the plaintiff's claims were time barred by § 35-56. Accordingly, although the court in Nash cited language regarding jurisdictional statutes of limitation, the procedural posture of that case is different in that the statute properly was pleaded and raised at the summary judgment stage, rather than by way of a motion to dismiss.

entertain untimely trade secret actions, much less the "strong showing of a legislative intent to create a time limitation that, in the event of noncompliance, acts as a subject matter jurisdictional bar." (Internal quotation marks omitted.) *Williams* v. *Commission on Human Rights & Opportunities*, 257 Conn. 258, 277–78, 777 A.2d 645 (2001); see also *Lostritto* v. *Community Action Agency of New Haven, Inc.*, supra, 269 Conn. 32.

Moreover, it is evident that the right of action raised in the plaintiff's complaint existed at common law, independent of CUTSA. Accordingly, we conclude that the statute of limitations is not jurisdictional. See *Martino* v. *Scalzo*, supra, 113 Conn. App. 249 (concluding that, where right to enforce mortgage existed at common law, statute of limitations contained within General Statutes § 42a-3-118 (b) did not implicate subject matter of court and thus plaintiff was responsible for pleading statute); see also *L. G. DeFelice & Son, Inc.* v. *Wethersfield*, 167 Conn. 509, 513, 356 A.2d 144 (1975) ("That the right and remedy once existed at common law determines that the limitation in [General Statutes §] 12-119 is procedural and personal rather than substantive or jurisdictional and is thus subject to waiver. Accordingly, the court erred in raising the issue of limitation on its own motion.").

In the present case, the defendants have not filed an answer and special defenses. Rather, the defendants filed motions to dismiss the action, alleging a lack of subject matter jurisdiction. See *Gianetti* v. *Connecticut Newspapers Publishing Co.*, 136 Conn. App. 67, 75, 44 A.3d 191 (statute of limitations "defenses are appropriately raised as special defenses . . . and not in motions to dismiss"), cert. denied, 307 Conn. 923, 55 A.3d 567 (2012). Because the statute of limitations contained within § 35-56 does not implicate the court's subject matter jurisdiction, it must be specially pleaded. Raising the statute of limitations in § 35-56 by way of a motion to dismiss is

procedurally improper. Accordingly, we conclude that the court improperly granted the motions to dismiss.[8]

The judgment is reversed only as to the granting of the defendants' motions to dismiss on the ground that the statute of limitations had expired and the case is remanded with direction to deny the defendants' motions to dismiss as to the statute of limitations claim and for further proceedings according to law; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

[8] On appeal, the defendants raise several alternative grounds for affirmance, all of which are inadequately briefed in that they contain minimal citation to authority and lack analysis and application of the law to the facts of the case. "We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. . . . For a reviewing court to judiciously and efficiently . . . consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs." (Internal quotation marks omitted.) *Alterio* v. *Spak*, 237 Conn. App. 84, 90, 349 A.3d 614 (2026). Because the defendants' briefing of their alternative grounds for affirmance is inadequate to conduct any meaningful review, we conclude that we cannot address them.